VIOLETA ENRÍQUEZ PÉREZ y VIOLETA CAMINO ENRÍQUEZ, demandantes y recurridas, *v.* FERNANDO FERNÁNDEZ ET AL., demandados y peticionarios.

*Número:* O-79-111      *Resuelto:* 9 de mayo de 1979

*Darío Padín Mimoso,* abogado de los peticionarios; *Samuel E. Polanco,* abogado de las recurridas.

EL JUEZ ASOCIADO SEÑOR DIAZ CRUZ emitió la opinión del Tribunal.

En acción civil sobre daños y perjuicios por mala práctica contra dos médicos y un hospital, la Sala de San Juan del Tribunal Superior dictó orden señalándolo para juicio y denegando la solicitud de la demandada Administración del Fondo de Compensación del Paciente para que el pleito se sometiera a un panel de arbitraje a tenor de la Ley Núm. 74 de 30 de mayo de 1976 (26 L.P.R.A. sec. 4110). Recurrió dicha agen-

cia en *certiorari* y han formulado oposición los demandantes recurridos, por lo que resolvemos con la rapidez que autoriza la Regla 50 de nuestro Reglamento.

La práctica de la medicina y de la cirugía, a la sombra de los grandes avances científicos que, sin embargo, no han extirpado áreas de incertidumbre y total desconocimiento, [1] ejercida por profesionales de alta competencia y destreza en su mayoría, pero también por otros que no alcanzan esa calificación, es quehacer cuya noble encomienda de cuidar la salud y preservar la vida se ejerce contra una inevitable cuantía de riesgo, en ocasiones agravada por la impericia, descuido o negligencia del profesional practicante. El libre acceso a todo tipo de información instaurado por la sociedad abierta de nuestros días, rompió el secreto y la confidencialidad que antes sepultaban los errores del médico y hasta enervó la solidaridad tribal que imposibilitaba la reclamación de la parte perjudicada. El despertar de la conciencia social frente a la mala práctica de la medicina trajo como todos los cambios, consecuencias favorables y adversas. Si por un lado se abrió amplia brecha de acceso a la reparación del daño mediante indemnización pecuniaria, por otro la proliferación de demandas injustas y de cuantiosas compensaciones conturbó al médico y lo llevó a ejercer en constante temor del desprestigio y de la ruina económica. La consiguiente cautela privó al pa-

---

[1] La medicina es una ciencia inexacta, de inevitable falibilidad. Y lo es, dice el Dr. Gregorio Marañón, porque aun cuando llegue el día en que se conozcan todas las causas de enfermedad y el medio específico de combatirlas, "existirá siempre el factor reaccional del individuo enfermo, infinitamente variable e imposible de acomodar a previas normas; y ese factor, ahora y siempre, convierte todo tratamiento, aún el más rigurosamente exacto, en un azar, cuyo margen de posibilidades de error se puede, a fuerza de estudio y de perspicacia, disminuir, pero nunca eliminar. . . . Pedir cuentas al médico de su fracaso con un criterio científico, como se le pide a un ingeniero que ha calculado mal la resistencia de un puente, es disparate fundamental y es principio totalmente inaceptable." Benzo Cano, *La Responsabilidad Civil del Médico* (Prólogo), págs. 12–13, Barcelona, (1944).

ciente de la decisión genial, aunque audaz frente a imponderables, que en no pocos casos hace la diferencia entre la vida y la muerte. La práctica tímida de la medicina y la proliferación de demandas vino acompañada del abandono de este riesgo por la industria de seguros, cancelación de pólizas y la exigencia de primas prohibitivas. La situación derivó en un mal social de extensas proporciones: el pueblo vino a ser doblemente afectado por una disminución en la calidad de la medicina y por reducción de las posibilidades de obtener un resarcimiento adecuado en los casos de práctica culposa o negligente. El derecho a recobrar contra médicos y hospitales se enfrentaba a nuevas dificultades que se sumaban a la lentitud y prolongación del litigio debido a su compleja naturaleza, tanto en sus aspectos factuales como en los de Derecho.

Como remedio al problema se aprobó por la Asamblea Legislativa de Puerto Rico la ley estableciendo el Seguro de Responsabilidad Profesional Médico-Hospitalaria (Núm. 74 de 30 de mayo de 1976, 26 L.P.R.A. secs. 4101 a 4116) incorporada como parte de nuestro Código de Seguros. Dicho estatuto crea la Administración del Fondo de Compensación al Paciente como agencia con personalidad jurídica, cuyo propósito es, según el Art. 41.050 del citado Código (26 L.P.R.A. sec. 4105), proveer una cubierta básica de responsabilidad profesional médico-hospitalaria hasta la suma de $500,000 para cubrir aquella porción de cada reclamación de daños por culpa o negligencia (*malpractice*) que exceda los límites de responsabilidad financiera que en la Sec. 4108 se fija en $100,000 por ocurrencia o hasta un agregado de $300,000 por año, cubierta por cuenta de plica (*escrow fund*) o seguro compulsorio. Se crea simultáneamente la Asociación de Suscripción Conjunta, compuesta por todos los aseguradores autorizados en Puerto Rico para contratar seguros llamados de responsabilidad y de negligencia profesional en la Sec. 408, incisos (1) y (10), los que vienen obligados a ser miembros

de dicha Asociación(²) como condición indispensable para seguir suscribiendo seguros aquí, y la cual deberá proveer seguro de responsabilidad médico-hospitalaria por los límites antes mencionados a los solicitantes cualificados.

La administración se nutre de las aportaciones de los profesionales y entidades participantes que para médicos, osteópatas y odontólogos generalistas que no lleven a cabo cirugía se fija el primer año en $100 y para los demás en $500; y en $50 por cama para las instituciones de salud. Después del primer año de operaciones la Junta de Directores de la Administración, en consulta con el Comisionado de Seguros, determinará e impondrá las aportaciones.

La citada Ley Núm. 74 establece términos de prescripción para las acciones sobre negligencia profesional, con términos de uno y dos años según las circunstancias; e imprescriptibilidad para casos de fraude u ocultación. Ningún demandante podrá recobrar de la Administración "a menos que se le emplace, o sea incluido como parte en el pleito", ordena la Sec. 4107(1).

■ Como eje procesal del diseño legislado dispone dicha Ley en su Art. 41.100 (26 L.P.R.A. sec. 4110) que "[t]oda acción civil que surja de una reclamación de daños por culpa o negligencia (*malpractice*) se iniciará mediante la radicación de una demanda en la sala del Tribunal Superior competente. El tribunal procederá a someter la reclamación a arbitraje según se dispone en la Sec. 4111 de este título"; y especifica en la siguiente Sec. 4111 que "[u]na vez transcurridos sesenta (60) días de radicada la contestación a la

---

(²)No se espera que la Asociación sea un organismo permanente. La Sec. 4104(5) limita su existencia a un período que no excederá de ocho años desde la fecha de vigencia de la ley que es 1° de julio de 1976, y podrá ser disuelta por el Comisionado, previa celebración de vistas públicas, en cualquier momento antes si determina que no es necesaria y que existe o que se ha mantenido un mercado adecuado para dicho seguro por la industria de seguros. El Comisionado podrá prorrogar la existencia de la Asociación por un período que no excederá de cuatro años adicionales.

demanda en una reclamación de daños por culpa o negligencia (*malpractice*), o en cualquier momento antes, que las partes notificaren estar preparadas, el Juez Administrador de la sala del Tribunal Superior competente designará dentro de los próximos treinta (30) días un panel de arbitraje que entenderá en el arbitraje de la reclamación y la sala o el lugar donde se reunirá dicho panel." [3]

Nos hemos extendido más de lo usual para exponer el fundamento originario y razón por la cual todo caso de mala práctica debe remitirse al arbitraje compulsorio dispuesto en la referida Ley. Comprendemos el legítimo interés del magistrado en retener el pleito para lo que él estima una decisión por sentencia con mayor prontitud que la obtenible del panel de árbitros, pero hemos de respetar la norma imperativa del estatuto. *Cf. Com. de Seguros* v. *Builders Ins. Co.*, 108 D.P.R. 625 (1979).

En la acción civil por mala práctica médica el tribunal no ha de esperar petición de parte para remitir el asunto al arbitraje especial ordenado por la citada Ley Núm. 74 de 1976, sino actuar motu proprio a los 60 días de radicada la contestación, o antes, si las partes notificaren estar preparadas, organizando el panel de arbitraje. La realidad de que en este caso en particular el juicio ante el tribunal pueda adelantar la decisión del pleito, no autoriza la desviación del procedimiento cuidadosamente ordenado por el legislador. *Cf. Sucn. Carderaros* v. *Tribunal Superior*, 103 D.P.R. 721 (1975).

*Se expedirá el certiorari y se dictará sentencia a tenor de la Regla 50 del Reglamento de este Tribunal anulando la*

---

[3] El panel de arbitraje tendrá funciones cuasi-judiciales y estará compuesto por tres miembros, un abogado que será su Presidente, un miembro de la profesión médica, que pertenecerá a la clase a la cual pertenezca la persona contra quien se haya radicado la acción y un representante del interés público que no será abogado ni profesional en el cuidado de salud ni representante de institución para el cuidado de salud. 26 L.P.R.A. sec. 4111(2).

*orden recurrida y devolviendo el caso a instancia para continuación de procedimientos compatibles con lo aquí resuelto.*

El Juez Asociado Señor Torres Rigual no intervino. El Juez Asociado Señor Irizarry Yunqué concurre con el resultado. El Juez Asociado Señor Negrón García se inhibió.