*Se dictará sentencia que confirme las sentencias apeladas.*

CARMEN M. RAMOS, por sí y en representación de su hijo menor DAVID RÍOS RAMOS, y éste además por sí, demandantes y recurridos, *v.* HOSPITAL SUB-REGIONAL DE AGUADILLA y OTROS, demandados; ADMINISTRACIÓN DEL FONDO DE COMPENSACIÓN AL PACIENTE, demandada y peticionaria.

*Número:* O-80-534    *Resuelto:* 12 de noviembre de 1981

*Darío Padín Mimoso,* abogado de la peticionaria; *Miguel A. Montalvo* y *Gil A. Morales,* abogados de los demandantes recurridos. El Estado Libre Asociado de Puerto Rico y las demás partes demandadas no comparecieron.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Un joven estudiante estando en el salón de clase sintió un dolor en una pierna. Sus compañeros lo llevaron al consultorio de un médico en el ejercicio privado de la profesión. Le recetó, pero no acertó. Lo llevaron entonces a una policlínica de donde lo refirieron al Hospital Sub-Regional de Aguadilla para que le hicieran unos análisis.

Le hicieron un estudio y, encontrando algo dudoso, lo refirieron al Centro Médico de Mayagüez. Allí "le sacaron una placa y le manifestaron que no tenía nada". Lo devolvieron a su casa y le dieron cita. El joven continuó con el dolor y la pierna se le adormecía. Lo llevaron entonces a la Clínica Bella Vista. Le hicieron nuevos análisis, tomaron placas y determinaron que tenía una hernia inguinal estrangulada(¹) y que había que hospitalizarlo para practicarle una operación de emergencia. Como no tenía medios económicos lo refirieron al Centro Médico de Mayagüez. En el Centro lo operaron. Falleció y resultó que no tenía hernia alguna. Estas son, en esencia, las alegaciones de la demanda.

La madre y un hermano del infortunado joven demandaron al médico privado que primeramente lo atendió, al Hospital Sub-Regional de Aguadilla, al Centro Médico de Mayagüez, al Estado Libre Asociado y al Hospital Bella Vista. Los otros médicos demandados actuaron como empleados del E.L.A., de las instituciones pertenecientes al E.L.A. y del Hospital Bella Vista. Se incluyó, además, como demandada a la Administración de Compensación del Paciente.

La Administración solicitó que se desestimara la demanda en cuanto a ella. Fundó su pedido en el hecho de que el Hospital Sub-Regional de Aguadilla y el Centro Médico de Mayagüez "son instituciones para el cuidado de la salud pertenecientes al Estado Libre Asociado de Puerto Rico y/o sus agencias e instrumentalidades y de conformidad con la ley de la Administración del Fondo de Compensación al Paciente no están obligados a hacer apor-

---

(¹) La hernia inguinal es una hernia de una víscera intestinal, generalmente intestino o epiplón, o ambos, en el conducto inguinal, cubierta por una prolongación del peritoneo o saco herniario. Es estrangulada cuando ocurre una constricción firme del cuello de la hernia intestinal, que ocluye completamente la luz del intestino y produce síntomas de obstrucción y gangrena de la porción herniada. *Diccionario Terminológico de Ciencias Médicas*, 8va ed., Barcelona, Ed. Salvat, 1963, pág. 583.

tación alguna a la Administración, por lo que la Administración no emite póliza alguna a su favor". Además, señaló que el Hospital Bella Vista, el Dr. Joaquín Oronoz y el Dr. Juan Díaz Troche, institución y médicos en el ejercicio privado de la profesión que atendieron en algún momento al paciente, tenían, para la fecha de los hechos alegados en la demanda, pólizas de responsabilidad en exceso al mínimo requerido por la Ley Núm. 74 de 1976, según fuere enmendada, y que los otros doctores demandados no aparecen registrados.

En virtud de la Ley de Responsabilidad Profesional Médico-Hospitaliaria(²) se creó la Administración del Fondo de Compensación al Paciente, cuyo propósito es "proveer una cubierta de responsabilidad profesional médico-hospitalaria hasta la suma de ciento cincuenta mil (150,000) dólares para cubrir aquella porción de cada reclamación de daños por culpa o negligencia (*malpractice*) que ocurra en Puerto Rico y que exceda los límites de responsabilidad financiera que se requiere en la sec. 4108 de este título a los profesionales en el cuidado de [la] salud y a las instituciones para el cuidado de [la] salud [veinticinco mil (25,000) dólares por reclamación o hasta un agregado de setenta y cinco mil (75,000) dólares por año]." Art. 41.050, inciso (1)(a), 26 L.P.R.A. sec. 4105(1)(a). Este inciso dispone, además, que la responsabilidad de la Administración no podrá exceder de setenta y cinco mil (75,000) dólares por cada reclamación y ciento cincuenta mil (150,000) dólares agregados, excepto cuando el asegurado haya obtenido de y pagado a la Administración una cubierta opcional hasta quinientos mil (500,000) dólares. En este último caso la responsabilidad de la Administración no podrá exceder del monto de la cubierta opcional dispuesta en la póliza.

(²) Ya en *Vázquez Negrón* v. *E.L.A.*, 109 D.P.R. 19 (1979), expusimos las circunstancias que propiciaron que la Asamblea Legislativa aprobara el Seguro de Responsabilidad Profesional Médico-Hospitalaria. Ley Núm. 74 de 30 de mayo de 1976, Art. 41.010 *et seq.* del Código de Seguros, 26 L.P.R.A. sec. 4101 *et seq.*

El fondo que este organismo administra se nutre de las aportaciones que por ley vienen obligados a hacer los profesionales en y las instituciones para el cuidado de la salud en el modo y proporción que dispone el Art. 41.060 del Código. 26 L.P.R.A. sec. 4106. De acuerdo con este artículo "cada profesional en el cuidado de salud e institución para el cuidado de salud que preste activamente servicios en Puerto Rico vendrá obligado a pagar [anualmente] a la Administración la aportación [que ella establezca para la cubierta dispuesta en el Código]". El Art. 41.080 (26 L.P.R.A. sec. 4108) exime de dicho pago a (1) los profesionales en el cuidado de salud que no ejercen privadamente su profesión y trabajan exclusivamente como empleados de instituciones privadas para el cuidado de salud y están cubiertos por el seguro de éstas; (2) los profesionales en el cuidado de la salud que trabajan exclusivamente para el Estado Libre Asociado de Puerto Rico, sus agencias, dependencias y municipios que no ejerzan privadamente su profesión; y (3) las instituciones para el cuidado de la salud que pertenezcan al Estado Libre Asociado de Puerto Rico, sus agencias, dependencias y municipios.

En cuanto a los médicos que trabajan exclusivamente para instituciones privadas aseguradas, la razón por la que no tienen que probar que están asegurados privadamente ni acogerse al seguro suplementario que proporciona la Administración es fácilmente perceptible. En estos casos la responsabilidad de estos médicos está cubierta por su patrono. En otras palabras, las instituciones para las que trabajan les proporcionan el seguro necesario para cubrir los riesgos que acarrea el ejercicio de su profesión allí.

En cuanto a los médicos que trabajan exclusivamente para el Estado, la razón por la que también están exentos de probar su responsabilidad financiera es similar. En estos casos el Estado les ha otorgado inmunidad completa

contra demandas por culpa o negligencia en el desempeño de sus funciones como empleados públicos, Art. 41.080, inciso (1), 26 L.P.R.A. sec. 4108, inciso (1), y ha asumido la responsabilidad por éstos. Ni los profesionales en el cuidado de la salud que trabajan exclusivamente para el Estado ni las instituciones en el cuidado de la salud pertenecientes al Estado, sus agencias, dependencias y municipios, hacen aportaciones a la Administración. Tampoco el Estado.

■ El tribunal de instancia entendió que a pesar de esto la Administración responde de los daños y perjuicios ocasionados por los médicos e instituciones hospitalarias del Estado porque de lo contrario el perjudicado quedaría "huérfano de un medio reparador sustitutivo". Esta interpretación es errónea. El Estado Libre Asociado de Puerto Rico responde por los daños que ocasionen los actos culposos o negligentes de sus empleados. *Galarza Soto* v. *E.L.A.*, 109 D.P.R. 179, 181 (1979). Los provenientes de la impericia profesional médica de sus empleados no son la excepción. *Pérez* v. *E.L.A.*, 95 D.P.R. 745 (1968); *cf. Negrón* v. *Municipio de San Juan*, 107 D.P.R. 375 (1978).

■ La creación de la Administración garantiza la disponibilidad de un seguro de responsabilidad profesional médico-hospitalaria a aquellos médicos e instituciones para el cuidado de la salud que la ley requiere que estén asegurados y hagan aportaciones el fondo de compensación al paciente. La ley no requiere que el Estado lo esté ni que haga aportación de clase alguna.

■ La Administración no responde por las reclamaciones contra el Estado como tampoco puede responder por las reclamaciones dirigidas contra los médicos e instituciones que no hacen las aportaciones a que vienen obligados por disposición expresa de la ley. En este sentido véase el Art. 41.070 (26 L.P.R.A. sec. 4107), que dispone, en parte, que *"en ningún caso* la Administración responderá por daños por culpa o negligencia (*malpractice*) ocasionados en

un año fiscal para el cual el profesional en el cuidado de salud o institución para el cuidado de salud no haya cumplido con las aportaciones exigidas en el Art. 41.060 [sec. 4106 de este título]".

De manera que respecto al Hospital de Distrito de Mayagüez y al Hospital Sub-Regional de Aguadilla, ambos pertenecientes al Estado, la responsabilidad por el pago de cualquier reclamación corresponde al Estado Libre Asociado de Puerto Rico y no a la Administración.

■ El único supuesto bajo el cual la Administración podría responder no está presente en este caso. Se trata de la disposición que permite a la Administración proveer una cubierta voluntaria para las instituciones pertenecientes al Estado o sus municipios. Art. 41.050, inciso (1)(d)(i), 26 L.P.R.A. sec. 4105. No surge, sin embargo, que el Estado se haya acogido a este tipo de cubierta opcional.

La Administración tampoco responde por las reclamaciones contra los tres médicos que, según la declaración jurada que acompañó la moción, no hicieron la correspondiente aportación ni presentaron prueba de su responsabilidad financiera. Art. 41.070 (26 L.P.R.A. sec. 4107).

■ Sin embargo, se impone la confirmación de la resolución por razones distintas a las aducidas en la resolución de instancia. Aun la revisión de órdenes o resoluciones interlocutorias se da contra éstas y no contra sus fundamentos. *Rodríguez* v. *John Hancock Mutual Life*, 110 D.P.R. 1, 3, n. 1 (1980).

La declaración jurada de la promovente afirma que respecto al Hospital Bella Vista y otros dos médicos la Administración no responde diz que porque ellos "tenían para la fecha de los hechos alegados en la demanda [una] póliza de responsabilidad en exceso [del] mínimo requerido por la ley". El problema con esta aseveración es que no permite concluir que la Administración está exenta de responsabilidad.

La ley exige, como hemos dicho, que tanto médicos

como instituciones en el cuidado de la salud se aseguren en por lo menos veinticinco mil dólares por reclamación o hasta un agregado de setenta y cinco mil dólares por año. Art. 41.080 (26 L.P.R.A. sec. 4108). La Administración provee una cubierta por el exceso de dicha cantidad hasta la suma de ciento cincuenta mil dólares. Art. 41.050 (26 L.P.R.A. sec. 4105). Precisamente porque la Administración puede ser responsable en parte de la reclamación que exceda de aquellos límites es que el inciso (1) del Art. 41.070 (26 L.P.R.A. sec. 4107) dispone que la Administración será parte indispensable en todo pleito de daños por impericia profesional médica.

■ Es posible que el médico o institución haya adquirido un seguro con una compañía privada en exceso de los mínimos de veinticinco y setenta y cinco mil. En tal caso el Art. 41.070 (26 L.P.R.A. sec. 4107) en su inciso (6) dispone que dicha cubierta será responsable por pérdidas hasta la cantidad que exprese la póliza, pero el médico o institución puede obtener una reducción actuarial adecuada a su aportación a la Administración. De ahí que pueda darse el caso de que la póliza obtenida en el sector privado cubra el monto total de la responsabilidad que la ley le impone subsidiariamente a la Administración y en ese caso ésta no vendría obligada a responder. Pero de la declaración jurada que se presentó no surge si el exceso de la póliza cubre la totalidad de la responsabilidad de la Administración y nosotros no podemos inferir ese dato. Es necesario que la declaración jurada exponga en detalle cuál es el monto de la póliza del médico o institución asegurado y, si posible, el nombre de la compañía que expidió la póliza. Esos son detalles que según la ley deben constar en los expedientes de la Administración y son de fácil comprobación. La mera conclusión de que el médico en cuestión tiene seguro en exceso del mínimo dispuesto por ley sin especificar cuál es el exceso y sin que surja, por ende, que la Administración está exenta de responsabi-

lidad, es insuficiente para desestimar el pleito en cuanto a ésta.

*En mérito de lo anterior se confirmará la resolución recurrida y se devolverá el caso para ulteriores procedimientos.*