USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2214 MARTA NIEVES, IN REPRESENTATION AND ON BEHALF OF HER MINOR SON ANGEL LUIS HERNANDEZ NIEVES, Plaintiff, Appellant, v. UNIVERSITY OF PUERTO RICO, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ David Efron with whom Law Offices of David Efron was on brief for ___________ __________________________ appellant. Efren T. Irizarry-Colon with whom Elisa M. Figueroa-Baez was on _______________________ ______________________ brief for appellees. ____________________ October 18, 1993 ____________________ CYR, Circuit Judge. Marta Nieves appeals a district CYR, Circuit Judge. ______________ court order dismissing the medical malpractice action she brought in behalf of her minor son Angel Luis Hern ndez Nieves against Angel Gelp , M.D., and Gonz lez Recio, M.D., whom the district court found immune from suit pursuant to P.R. Laws Ann. tit. 26, 4105. We affirm. I I BACKGROUND BACKGROUND We recite the facts in the light most favorable to plaintiff. See Goldman, Antonetti, Ferraiuoli, Axtmayer & ___ ______________________________________________ Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 689 (1st Cir. 1993) _______ ___________________ (summary judgment). In December 1983, Marta Nieves entered the Federico Trilla Hospital ("the Hospital"), a privately owned and operated medical facility in Puerto Rico. Appellee Angel Gelp and Jose Mel ndez, medical residents under the supervision of the attending physician, Dr. Ailed Gonz lez Recio, undertook the delivery of Nieves' son Angel. The three physicians were affili- ated with the University of Puerto Rico Medical School ("UPR"). Later, Angel was diagnosed with serious physical and mental impairments, allegedly attributable to asphyxiation during childbirth. In December 1990, Nieves, by that time a resident of Florida, brought this diversity action against, inter alia, UPR, _____ ____ Drs. Gelp and Gonz lez Recio, and their insurers, alleging 2 professional negligence. See P.R. Laws Ann. tit. 31, 5141- ___ 5142.1 Defendants answered and moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). UPR, noting its status as an "arm" of the Commonwealth of Puerto Rico, asserted its Eleventh Amendment immunity from unconsented suit, see Perez v. Rodriguez Bou, 575 F.2d 21, 25 (1st Cir. 1978), and ___ _____ _____________ its insusceptibility to federal diversity jurisdiction, see Moor ___ ____ v. County of Alameda, 411 U.S. 693, 717 (1973). _________________ The two appellees, who claimed to be UPR "employees," hence physicians employed by the Commonwealth, relied on P.R. Laws Ann. tit. 26, 4105 (Supp. 1989) as a basis for dismissal: No health service professional may be includ- ed as a defendant in a civil suit for damages due to malpractice caused in performance of his profession while said health service professional acts in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its dependen- cies, instrumentalities and municipalities. Id. Section 4105, a provision of Act No. 74 of 1976, otherwise ___ known as the Medico-Hospital Professional Liability Insurance Act (MHPLIA), was enacted to alleviate the severe malpractice insur- ance crisis facing Puerto Rico. See generally Enr quez P rez v. ___ _________ ______________ Fern ndez, 108 P.R. Dec. 674, 677-80 (1979). The appellee _________ doctors contend that any patient injured by the professional negligence of a physician covered by section 4105 has legal recourse only against the physician's employer, or the Common- ____________________ 1The original complaint also named Dr. Fern ndez, the admitting physician, and Dr. Mel ndez, but Nieves dismissed as to Fern ndez and failed to serve Mel ndez. 3 wealth, which is immune from compensatory damages liability in excess of $75,000, see P.R. Laws Ann. tit. 32, 3077(a), and, in ___ any event, not amenable to suit in federal court.2 On January 31, 1992, following eight months of discov- ery, Nieves filed her opposition to the motion to dismiss. Nieves contended that section 4105 violated the Equal Protection Clause and the Due Process Clause of the United States Constitu- tion and their counterpart clauses in the Puerto Rico Constitu- tion. Alternatively, Nieves argued that there remained a genuine issue of material fact with respect to whether Drs. Gelp and Gonz lez Recio were UPR "employees" entitled to section 4105 immunity, or merely "independent contractors" employed pursuant to a contract between the Hospital and UPR. On the same day that Nieves filed her opposition to the motion to dismiss, the district court dismissed the complaint as to all defendants.3 Three weeks later, however, the two appel- lee physicians filed a "reply" to Nieves' opposition, to which they attached a sworn statement by a UPR dean attesting that Dr. Gonz lez Recio was an "employee" of the UPR medical school campus ____________________ 2Insurers are insulated from liability to the same extent their insured physicians are entitled to 4105 immunity. See ___ Lind Rodr guez v. Commonwealth of Puerto Rico, 112 P.R. Dec. 67, _______________ ___________________________ 68 (1982) ( 4105 immunity not a personal defense, but the "inexistence of a cause of action," so that "the insurer is not liable"). 3The district court granted Nieves' request for voluntary dismissal of the complaint against UPR for lack of jurisdiction. See Fed. R. Civ. P. 41(a)(2). A Rule 12(b)(1) dismissal would ___ not bar suit against UPR in the Commonwealth courts. See Costel- ___ _______ lo v. United States, 365 U.S. 265, 285 (1961) (Rule 12(b)(1) __ ______________ dismissal not disposition on merits). 4 in December 1983, and that Dr. Gelp was a "resident" in the UPR medical graduate program. On April 7, 1992, Nieves filed a motion for clarification and reconsideration, expressing concern that the district court overlooked the arguments presented in the opposition memorandum she filed the day the court dismissed the complaint. The district court denied the motion to reconsider. II II DISCUSSION DISCUSSION A. Constitutionality of Section 4105. A. Constitutionality of Section 4105. _________________________________ Nieves contends that section 4105 violates the equal protection and due process clauses of the Puerto Rico Constitu- tion4 because it (1) discriminates against "poor" people an inherently "suspect" class under Puerto Rico constitutional law who have no economic option but to use the low-cost public health services provided by physicians employed by the Common- wealth, or (2) divests all patients treated by Commonwealth- employed physicians of a "fundamental" constitutional right; that is, the right to recover full compensatory damages for injuries ____ ____________________ caused by physician negligence.5 Nieves argues, therefore, that 4Article II, section 7, of the Commonwealth constitution provides: "The right to life, liberty and enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied equal protection of the laws. . . ." Article II, section 1, provides: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality." 5On appeal, Nieves has abandoned the equal protection and due process arguments premised on the United States Constitution. 5 her constitutional challenges require us to subject section 4105 to "strict scrutiny." She requests that the district court's interpretation of Puerto Rico law be set aside, or that these constitutional questions be certified to the Puerto Rico Supreme Court. See P.R. Laws Ann. tit. 4, App. I-A, Rule 27(a).6 ___ Under Puerto Rico law, a statutory classification that "affects fundamental rights of the citizen or is intended against ___________ ______ a suspect classification" is subjected to "strict scrutiny," a _______ ______________ heightened standard under which the Commonwealth must demonstrate "a compelling state interest which justifies the classification and that the [classification] necessarily encourages the attain- ment of that interest." Zachry Int'l of Puerto Rico v. Superior ___________________________ ________ Court of Puerto Rico, 104 P.R. Dec. 267, 277-78 (1975) (emphasis _____________________ added). We have been unable to find a reported Puerto Rico decision squarely addressing the constitutional questions raised by Nieves. The cases cited by appellees, and presumably endorsed by the district court, are distinguishable, either because they involve statutory classifications which do not implicate the ____________________ 6Rule 27 of the Supreme Court of Puerto Rico provides, in pertinent part: This court may take cognizance of any matter certified for it by the Supreme Court of the United States, a Circuit Court of Appeals of the United States, a Dis- trict Court of the United States, . . . whenever it is thus requested by any of said courts, if before the petitioner court there is any judicial matter involving questions of Puerto Rican law which may determine the result thereof, and with regard to which, in the opin- ion of the petitioner court, there are no clear prece- dents in the case law of this Court. P.R. Laws. Ann. tit. 4, App. I-A, Rule 27(a). 6 species of "fundamental right" or "suspect class" relied on by Nieves in the present case, see, e.g., Lind Rodr guez v. Common- ___ ____ ______________ _______ wealth of Puerto Rico, 112 P.R. Dec. 67 (1982); V zquez Negr n v. _____________________ ______________ Department of Health of Puerto Rico, 109 P.R. Dec. 19 (1979),7 _____________________________________ or because they treat with arguments exclusively based on the United States Constitution, not the Commonwealth constitution, see, e.g., Rodr guez Diaz v. Sierra Mart nez, 717 F. Supp. 27, 32 ___ ____ ______________ _______________ (D. P.R. 1989) (presuming that Lind and V zquez also determined ____ _______ ____________________ 7The district court cited these two decisions in its dis- missal order. V zquez Negr n reversed a summary judgment for a _______________ defendant-physician, finding that he was not covered by the pre- ___ 1978 version of 4105, which excluded from its protection physicians who worked only part-time for the Commonwealth. V zquez Negr n, 109 P.R. Dec. at 23. On appeal, plaintiff _______________ proposed an alternative basis for reversal, arguing that 4105 violated his right to equal protection. Because the court found 4105 inapplicable, however, it expressly refused to reach (or even to describe) plaintiff's constitutional argument. Id. at ___ 25. On the other hand, the court reached, and rejected, a distinct equal protection challenge raised by the defendant- __________ physician, who contended that the pre-1978 version of 4105 _________ discriminated between physicians who worked exclusively for the Commonwealth and those who worked part-time. Id. at 25-26. ___ Because part-time physicians are not a "suspect" class, and immunity from suit is not a "fundamental" constitutional right, see Alicea v. C rdova Iturregui, 117 P.R. Dec 676, 691 (1986) ___ ______ _________________ (noting that neither Lind nor V zquez dealt with any fundamental ____ _______ right of physicians), the court upheld the statute on a tradi- tional "rational basis" analysis. V zquez Negr n, 109 P.R. Dec. ______________ at 25-26. ("[I]t is evident that those physicians whose income is limited to the salary derived from the State deserve greater protection."). In Lind Rodr guez, the court affirmed summary judgment for a ______________ defendant-physician employed part-time by the Commonwealth, based on a 1978 amendment to 4105 which eliminated its "exclusivity" limitation. Lind Rodr guez, 112 P.R. Dec. at 68. Despite _______________ plaintiffs' failure to preserve their equal protection claim in the trial court, the Puerto Rico Supreme Court considered and rejected the argument on its merits, adding that "[plaintiffs] do not persuade us to change our decision in V zquez Negr n." Id. ______________ ___ at 68-69. This cryptic language in Lind Rodr guez provides no _______________ guidance, however, as the court did not describe the equal protection claim it was rejecting. 7 4105's validity under the United States Constitution, undertak- ing its own independent inquiry of federal case law, and citing _______ Schweiker v. Wilson, 450 U.S. 221 (1981)); supra note 5. _________ ______ _____ Absent controlling state-law precedent, a federal court sitting in diversity has the discretion to certify a state-law question to the state's highest court. See Lehman Bros. v. ___ _____________ Schein, 416 U.S. 386, 391 (1974). Before this discretionary ______ decision is even considered, however, we must first undertake our own prediction of state law for we may conclude that "the course [the] state court[] would take is reasonably clear." Porter v. ______ Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990); cf. Salve Regina ______ ___ _____________ College v. Russell, 499 U.S. 225, ___, 111 S. Ct. 1217, ____, 113 _______ _______ L. Ed. 2d 190, 203 (1991) (court of appeals erred by deferring to district court interpretation of local state law). 1. Suspect Class Based on "Social Condition". 1. Suspect Class Based on "Social Condition". _________________________________________ The equal protection clause of the Puerto Rico Consti- tution, eclectically patterned on such works as the American Declaration of the Rights and Duties of Man and the Universal Declaration of the Rights of Man, is more liberally phrased than its federal counterpart. See Pruneyard Shopping Ctr. v. Robins, ___ ________________________ ______ 447 U.S. 74, 81 (1980) (state constitution may afford more, but not less, protection than Federal Constitution). Specifically, Article II, section 1, of the Commonwealth constitution bans discrimination based on "social origin or condition." See supra ___ _____ note 4. The Puerto Rico Supreme Court has held that any statuto- ry classification that discriminates on the basis of a "human 8 dignity" standard enumerated in Article II, section 1, is inher- ently "suspect." See, e.g., L on Rosario v. Torres, 109 P.R. ___ ____ ____________ ______ Dec. 804, 813-14 (1980). Thus, although its precise contours remain undefined, "poverty" is considered a suspect classifica- tion under the Commonwealth constitution, triggering "strict scrutiny" analysis unobtainable under the Equal Protection Clause of the United States Constitution. Compare, e.g., Molina v. _______ ____ ______ Urban Renewal and Hous. Corp., 114 P.R. Dec. 295, 312 (1983) _______________________________ (summarizing history of Puerto Rico's constitutional convention, noting that "there can be no doubt that the drafters of our Constitution thought it was basic that there be no discrimination against any person by reason of the person's poverty . . . and any classification based on this should be regarded with suspi- cion and be strictly scrutinized") (Irizarry, J., concurring), with, e.g., Harris v. McRae, 448 U.S. 297, 323 (1980) ("[P]ov- ____ ____ ______ _____ erty, standing alone, is not a suspect classification."). Notwithstanding the unique history, culture and legal traditions of Puerto Rico, and the absence of a federal lodestar for a constitutional classification based on poverty, see San ___ ___ Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973) __________________________ _________ (noting that, unlike race or gender, "the class of disadvantaged 'poor' cannot be identified or defined in customary equal protec- tion terms"), we are confident that Nieves would not prevail on her claim under existing Commonwealth law. The claim falters on evidentiary grounds in that the summary judgment record is plainly deficient to enable a determination that the immunity 9 scheme established by section 4105 operates to discriminate on ________ the basis of a suspect classification. Nieves does not contend that section 4105 discriminates either on its face or as applied against "poor" patients. Nor is it self-evident that patients utilizing public health services in Puerto Rico a facially neutral statutory classifi- ________ cation are all, or even primarily, "poor." In addition, since section 4105 merely provides a "defense" which may be invoked by private civil litigants, i.e., public health service doctors, ____ against any patient allegedly injured as a result of medical malpractice by a public health service physician, Nieves cannot demonstrate that the Commonwealth has applied the statute select- _______ ively against only that subset of public health service patients who are "poor." Rather, Nieves' only colorable argument is that section 4105 has the actual effect of discriminating against ______ "poor" people because a disproportionate share of public health ________________ services in Puerto Rico is administered to the "poor." Given this position, we think that Nieves' proposed showing would not establish unlawful discrimination under existing Puerto Rico judicial authority. As a preliminary matter, we note that Nieves' claim of disparate impact rests on a fragile foundation. The data are presented in the form of a lawyer's assertions,8 rather than in ____________________ 8Nieves' opposition memorandum, signed by her attorney David Efron, Esquire, recites the following data: Puerto Rico's per capita income is $18,705.00 according to the Planning Board's 1988 Report to the Governor. 10 the form required by Rule 56(e),9 and are much less compelling and probative than Nieves' counsel claims.10 Nonetheless, we ____________________ In that same year, the Medical Assistance Program of the Puerto Rico Health Department reported that out of 667,753 patients who attended public health facilities on the island, 387,091 had annual income of less than $12,501; 57,750 of less than $3,300, 45 less than $5,800. Only 891 persons had annual income of $12,800 or more. Some 75% of the patients at public institu- tions are indigent. 9Nieves conceded that the district court correctly treated defendants' motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(b)-(c). Thus, as the nonmoving party, ___ Nieves was required to "set forth specific facts showing that there was a genuine issue for trial." Fed. R. Civ. P. 56(e). Quoting data out of context, Nieves did not attach either the full or excerpted reports she cited as the source of those data. See, e.g., Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st ___ ____ _______ ________________ Cir. 1987). Factual assertions by counsel in motion papers, memoranda, briefs, or other such "self-serving" documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment. See, e.g., Fragoso ___ ____ _______ v. Lopez, 991 F.2d 878, 887 (1st Cir. 1993); Transurface Carri- _____ __________________ ers, Inc. v. Ford Motor Co., 738 F.2d 42, 46 (1st Cir. 1984); see _________ ______________ ___ generally 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, _________ Federal Practice & Procedure 2723, at 63-65 (1983 & Supp. ______________________________ 1993); cf. also Fed. R. Evid. 201(d) (judicial notice of adjudi- ___ ____ cative facts is required only where proponent supplies court with necessary information). 10For example, the opposition memorandum states that only 891 out of 667,753 persons treated at public health facilities in 1988 had annual incomes in excess of $12,800, and that Puerto Rico's "per capita income" that year was $18,705. It does not specify, however, whether the $18,705 figure is the median or the average annual income, nor explain the basis for selecting $12,800 as the "poverty" cut-off figure, nor indicate the per- centage of the total population of Puerto Rico that falls below the suggested "poverty" cut-off. Moreover, the data presented in the memorandum are inconsis- tent. Although the memorandum asserts that 75% of public health patients were "indigent," the other figures cited, if taken to be poverty "lines," would yield indigency rates of either 66% (444,886 patients of 667,753 below $12,501), or more than 98% (666,862 out of 667,753 below $12,800). Both the 66% and the 98% indigency rates assume that the ambiguous figure of 387,091 does not really include all patients with incomes "less than $12,501," as Nieves describes, but only those with incomes falling between _______ 11 assume, for present purposes only, that many of the users of Puerto Rico public health services are likely to be poorer than the average population. Still, we are not persuaded that the Puerto Rico courts would find that such a showing was a disposi- tive basis from which to declare section 4105 unconstitutional. In addition to raw statistical data of disproportionate impact, we think the Commonwealth courts would require evidence (e.g., historical patterns of discrimination against the targeted ____ class, or pre-enactment legislative history) that the Puerto Rico legislature enacted section 4105 with an invidious discriminatory purpose or intent against the "poor" as a class. Cf., e.g., ___ ____ Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 278-80 ________________________________ ______ (1979) (upholding gender-neutral state statute that gave civil service employment preference to "veterans," even though pre- ferred class was proven to be 98% male, absent proof that Legis- lature enacted it "because of," rather than "in spite of" its adverse effects on women); Washington v. Davis, 426 U.S. 229, 239 __________ _____ (1976) (upholding testing for police officer applicants, despite statistical evidence that test had disproportionate adverse impact on black applicants, absent other evidence of "racially discriminatory purpose" of legislative enactment). Nieves proffered no such evidence of discriminatory purpose. In fact, section 4105's legislative history suggests that the Legislature ____________________ $3300 and $12,501. If Nieves' other cited figures (57,750 patients and 45 patients) merely represent further breakdowns of this overall figure of 387,091 patients, the indigency rate _______ actually falls to 58%. 12 was animated by far more beneficent motives concern that inflationary malpractice insurance premiums would dry up the supply of physicians willing to practice in public health servic- es, depriving many Puerto Rican families of quality health care. See generally Enr quez P rez, 108 P.R. Dec. at 677-80. ___ _________ ______________ Given this shortfall, we simply lack a reliable evidentiary base from which to appraise whether section 4105 dis- criminates against the alleged suspect classification under Commonwealth law.11 2. Fundamental Right to Civil Suit for Damages. 2. Fundamental Right to Civil Suit for Damages. ___________________________________________ Nieves' alternate constitutional claim bypasses the problematic "poverty" classification discussed above. Nieves contends that "strict scrutiny" analysis is required because the Puerto Rico Constitution guarantees the "fundamental" right to maintain a civil suit for full compensatory damages, see Torres ___ ______ v. Castillo Alicea, 111 P. R. Dec. 792, 801-802 (1981), without _______________ regard to whether the challenged statutory classification targets a suspect class. She argues that section 4105 unconstitutionally deprives a non-suspect class all patients who use Puerto Rico public health services of this fundamental right without ____________________ 11The Puerto Rico Supreme Court would reject any certifica- tion of this factually undeveloped issue. See Pan Am. Computer ___ _________________ Corp. v. Data Gen. Corp., 112 P.R. Dec. 780, 788 (1982) (Rule 27 _____ _______________ certification is warranted only if, inter alia, "the case makes _____ ____ an account of all the facts relevant to said questions showing clearly the nature of the controversy giving rise to the ques- tions"). 13 positing a compelling governmental interest in its classification __________ scheme. But cf., e.g., Christensen v. Ward, 916 F.2d 1462, 1472 ___ ___ ____ ___________ ____ (10th Cir.) (pursuit of state-law tort action not fundamental right guaranteed by Federal Constitution), cert. denied, 498 U.S. _____ ______ 999 (1990); Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir. _________ _______ 1987) (same). In Alicea v. C rdova Iturregui, 117 P.R. Dec. 676 ______ __________________ (1986), the Puerto Rico Supreme Court struck down P.R. Laws Ann. tit. 26, 4109(1), a MHPLIA companion provision to section 4105, which established a maximum two-year statute of limitations for all medical malpractice claims, without regard to whether the injury was discoverable within the two-year limitations period. The court noted that section 4109 created different (albeit non- suspect) classifications for patients who sustained patent injuries and patients with latent injuries. Id. at 688. The ___ court reaffirmed its earlier statement in Torres "that the right ______ to commence a civil action is a fundamental right," and went on ___________ _____ to conclude that "any legislative classification affecting such right will have to withstand the strict judicial scrutiny analy- sis." Id. at 690 (citing Torres, 111 P. R. Dec. at 801-02) ___ ______ (emphasis added). In Alicea, the court held that the Common- ______ wealth lacked a sufficiently "compelling state interest" to justify even this non-suspect classification, and that the purported goals of the MHPLIA assuring the general avail- ability of medical malpractice insurance and avoiding the in- creasing medical costs and declining quality of care associated 14 with exorbitant malpractice insurance premiums would not do. Id. at 693. ___ The Alicea court's depiction of Torres has engendered a ______ ______ splintered precedent that ultimately undermines Nieves' argument. Only two justices joined the opinion of the court in Alicea ______ without reservation. Three justices filed separate concurrences; one justice lodged a vigorous dissent.12 In her concurring opinion, Justice Naveira de Rod n concluded that the right to bring a civil suit for damages was at best a "property" right, and though section 4109(1) was violative of procedural due process, she opined that Torres did not recognize a "fundamental" ______ ___ constitutional right of access to the civil courts. Alicea, 117 ______ P.R. Dec at 699-70 n.1 (Naveira de Rod n, J., concurring).13 Moreover, the dissent warned that such a reading of Torres would ______ expose all Puerto Rico civil statutes of limitations to strict scrutiny. Id. at 710 (Rebollo L pez, J., dissenting). Thus, five ___ of the seven justices on the Court did not endorse Nieves' inter- pretation of Torres. See In re San Juan Dupont Plaza Hotel Fire ______ ___ _______________________________________ Litig., 687 F. Supp. 716, 733-34 (D. P.R. 1988) (citing Alicea as ______ ______ support for interpreting Torres as recognizing a "property" ______ right, not a "fundamental" right, to bring civil suit for damag- ____________________ 12Justice Denton did not participate in the Alicea decision, ______ and Justice Pons Nu ez concurred without a separate opinion. 13The concurrence aptly notes that, unlike states such as Texas and Arizona that presumably recognize such a fundamental constitutional right, see Kenyon v. Hammer, 688 P.2d 961 (Ariz. ___ ______ ______ 1984); Nelson v. Krusen, 678 S.W.2d 918 (Tex. 1984), Puerto Rico ______ ______ has no separate or explicit "open access to courts" provision in its constitution. 15 es); see also Gregg v. Georgia, 428 U.S. 153, 169 n. 15 (1976) ___ ____ _____ _______ (noting that, when no rationale commands the respect of a majori- ty of the court, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (emphasis added). _________ _______ Moreover, our own analysis of the Torres decision ______ confirms that the reservations expressed by the concurring and dissenting justices in Alicea conflict with the broader inter- ______ pretation of Torres proposed by Nieves. Torres struck down a ______ ______ statute which capped tort damages in malpractice actions against the Commonwealth, but permitted plaintiffs who won higher jury awards to petition the Legislature for special exemption from the caps. See Torres, 111 P. R. Dec. at 795. Although Torres cites ___ ______ ______ language suggesting that the challenged statute fatally impeded a "fundamental" right to bring a civil action, the court struck down the statute without mentioning the need to demonstrate a "compelling state interest," thereby raising grave doubt whether "strict scrutiny" analysis was engaged. Arguably, at least, Torres invalidated the legislative exemption scheme simply as an ______ undue encroachment on the judicial branch, "in contravention to the principle of separation of powers." Id. at 803; cf. V lez ___ ___ _____ Ruiz v. Commonwealth of Puerto Rico, 111 P.R. Dec. 747, 762 ____ ____________________________ (1981) (striking down MHPLIA's compulsory arbitration provision as undue interference in judicial function). Thus, Nieves' proposed reading of Torres, the mooring for her constitutional ______ claim, derives from language which may well be mere dicta. 16 Since a majority of the Puerto Rico Supreme Court has not interpreted (indeed, has declined, as in Alicea, to inter- ______ pret) Torres as Nieves urges, it would be unfitting for us to ______ chart the future course of Commonwealth law or to enlist the Puerto Rico Supreme Court in her pathfinding effort. See Venezia ___ _______ v. Miller Brewing Co., 626 F.2d 188, 192 n.5 (1st Cir. 1980) ___________________ (court should be wary of certification where requesting party merely seeks to persuade state court to extend current state ______ law). State-law claimants who bypass an available state forum generally are not entitled to adventurous state-law interpreta- tions from the federal forum,14 nor have we been receptive to their requests for certification newly asserted on appeal.15 ____________________ 14See Putnam Resources v. Pateman, 958 F.2d 448, 470 n.25 ___ _________________ _______ (1st Cir. 1992); Carlton v. Worcester Ins. Co., 923 F.2d 1, 3 _______ __________________ (1st Cir. 1991); Ryan v. Royal Ins. Co., 916 F.2d 731, 744 (1st ____ _______________ Cir. 1990); Taylor v. Aetna Casualty and Sur. Co., 867 F.2d 705, ______ ___________________________ 706 (1st Cir. 1989); see also Tidler, 851 F.2d at 425. ___ ____ ______ 15See Fischer v. Bar Harbor Banking & Trust Co., 857 F.2d 4, ___ _______ ______________________________ 8 (1st Cir. 1988), cert. denied, 489 U.S. 1018 (1989); Cantwell _____ ______ ________ v. University of Massachusetts, 551 F.2d 879, 888 (1st Cir. ____________________________ 1977); see also Seaboard Sur. Co. v. Garrison, Webb & Stanaland, ___ ____ _________________ ___________________________ P.A., 823 F.2d 434, 438 (11th Cir. 1987); Colonial Park Country ____ ______________________ Club v. Joan of Arc, 746 F.2d 1425, 1429 (10th Cir. 1984); Smith ____ ___________ _____ v. FCX, Inc., 744 F.2d 1378, 1379 (4th Cir. 1984), cert. denied, _________ _____ ______ 471 U.S. 1103 (1985). Nieves first requested certification on appeal; thus her entitlement is "considerably weaken[ed]." Boston Car Co., Inc. _____________________ v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 ______________________________________ (1st Cir. 1992); see also Croteau v. Olin Corp., 884 F.2d 45, 46 ___ ____ _______ __________ (1st Cir. 1989); Fischer, 857 F.2d at 8; Tidler, 851 F.2d at 426; _______ ______ Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir. 1987) _______ _________________ ("The practice of requesting certification after an adverse judgment has been entered should be discouraged."). Absent a timely request to the district court, the requesting party must advance some "compelling" reason for certification on appeal. Id. Although on occasion we have ordered certification sua ___ ___ sponte, we find here no countervailing reasons for allowing ______ certification in these circumstances. 17 While Nieves did not raise the section 4105 "defense," of course, it was a clearly foreseeable response to her federal complaint against appellees. B. Definition of "Employee" in Section 4105. B. Definition of "Employee" in Section 4105. ________________________________________ Finally, Nieves contends that a genuine issue of material fact remained with respect to whether Drs. Gelp and Gonz lez Recio were independent contractors working for UPR pursuant to a contract with the Hospital, a privately-owned medical facility. See Flores Rom n v. Ramos, 90 J.T.S. 132, at ___ ____________ _____ 8243-44 (1990) (holding that physicians who were merely indepen- dent contractors of Commonwealth, and not its "employees," were not entitled to section 4105 immunity). To determine whether a physician claiming section 4105 immunity is an "independent contractor," or merely a Commonwealth "employee," the court must consider the totality of the circumstances, focusing principally on the level of control contractually reserved to the governmen- tal entity over the physician's provision of patient services. See Flores Rom n, 90 J.T.S. 132, at 8244. Relevant indicia of ___ _____________ "independent contractor" status may include, inter alia, evidence _____ ____ that the physician (1) earned compensation on a per-patient basis, rather than a flat salary; (2) received no fringe benefits of a type given to the principal's employees (- _ e.g., vacation or sick leave, pension ____ benefits, tax withholding); (3) personally owned, invested in, or paid for the medical equipment and supplies 18 used to treat patients, or the facili- ties which formed the situs of that treatment, or personally hired and su- pervised her own administrative or sub- sidiary medical personnel; (4) held and paid for her own medical mal- practice insurance policy; or (5) exercised final judgment as to the ap- propriate medical treatment to render to patients. Id.; see also Rivera v. Hospital Universitario, 762 F. Supp. 15, ___ ___ ____ ______ ______________________ 17 (D. P.R. 1991). On appeal, Nieves and the appellees bandy various statements relating to the physicians' status, without much regard to whether these "facts" were ever substantiated in the summary judgment record as required by Rule 56. In their answer and motion to dismiss, Drs. Gelp and Gonz lez Recio claimed that they were "state employed physicians" entitled to section 4105 immunity. Later, they introduced a sworn statement by John M. Rom n Rodr guez, Dean of UPR's Medical Science Campus and custo- dian of its personnel records, attesting that Dr. Gonz lez Recio was an "employee" of the UPR medical school in December 1983, and that Dr. Gelp , while not an "employee" of UPR, was enrolled as a "resident" in training in UPR's medical graduate program.16 ____________________ 16We assume for present purposes that appellees had the burden of proof with respect to their status as Commonwealth "employees." See P.R. Laws Ann. tit. 32, 1971; but see supra ___ ___ ___ _____ note 2. We note, however, that Nieves might have raised a distinct issue of statutory interpretation in the district court and on appeal; namely, whether the affiant's mere assertion that Gelp was a UPR medical "resident" or trainee was probative, as a matter of law, of his status as a UPR "employee" under section 4105. Generally speaking, of course, not all UPR students would necessarily be deemed school "employees" merely by virtue of 19 Nieves conceded at oral argument that the motion to dismiss was properly converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b)-(c). As the nonmoving party, Nieves was required to set forth specific facts demonstrating a trialworthy issue as to whether these defendant physicians were independent contractors. See Fed. R. Civ. P. 56(e). In support ___ of her "independent contractor" theory, Nieves contends that (1) prior to December 1983, pursuant to contract, UPR placed its faculty and medical graduate students (residents and interns) at the Hospital for training purposes, the Hospital paid UPR for their services, and UPR paid the physicians a salary out of the contract proceeds; (2) Dr. Gonz lez Recio, Dr. Gelp 's super- visor, headed the Hospital's OB-GYN department, and received no direct supervision in the performance of her Hospital duties from any UPR official; (3) UPR carried malpractice insurance coverage on both physicians at its own expense, allegedly a superfluous expenditure if the physicians were "employees" entitled to section 4105 immunity; and (4) the medical equipment and facili- ties the defendant physicians used to treat patients were neither provided nor owned by UPR. Nieves faces two difficulties on appeal. ____________________ their student status. But as framed on appeal, Nieves' argument does not contest Gelp 's status as a UPR "employee" on this ground. Therefore, we merely consider whether there was a genuine factual dispute as to Gelp 's status as an "independent contractor" of UPR. See Vanhaaren v. State Farm Mut. Auto. Ins. ___ _________ __________________________ Co., 989 F.2d 1, 5 (1st Cir. 1993) (party to diversity action ___ waives state-law interpretation not raised in district court at summary judgment); see also Hansen v. Continental Ins. Co., 940 ___ ____ ______ _____________________ F.2d 971, 983 n.9 (5th Cir. 1991) (same). 20 First, assuming these "facts" to be probative on the issue of "independent contractor" status (e.g., minimal UPR ____ supervision of Dr. Gonz lez Recio), the only "proof" presented by Nieves consisted of the undocumented and unsubstantiated asser- tions contained in her opposition memorandum of January 31, 1992. Although Nieves argues that "the facts . . . depend on the super- vision and control over [the doctors'] functions pursuant to ________ __ contract," and even though she deposed both physicians and con- ________ ducted discovery for eight months prior to dismissal, she never submitted the pertinent contract provisions, the malpractice insurance policies, or an affidavit in support of the factual assertions set forth in her opposition memorandum.17 Factual assertions by counsel in motion papers, memoranda, or briefs are generally not sufficient to generate a trialworthy issue. See ___ Fragoso v. Lopez, 991 F.2d 878, 887 (1st Cir. 1993); see also In _______ _____ ___ ____ __ re Morris Paint and Varnish Co., 773 F.2d 130, 134 (7th Cir. _________________________________ 1985); S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde __________________________________________ ____________ & Co., Inc., 690 F.2d 1235, 1238 (9th Cir. 1982). ___________ Second, even though a party may not generate a trial- worthy dispute at summary judgment merely by presenting unsub- stantiated allegations in its memoranda or briefs, a party may nonetheless concede facts adverse to its position on summary _______ ____________________ 17We appreciate that Nieves may have been caught off guard by appellees' reply memorandum, filed three weeks after the court's dismissal order. Nevertheless, if Nieves lacked suffi- cient time to present her evidence in admissible form, she could have moved for a continuance pursuant to Fed. R. Civ. P. 12(c) and 56(f). 21 judgment. See 10A Charles A. Wright, Arthur R. Miller & Mary K. ___ Kane, Federal Practice & Procedure 2723, at 63-65 (1983 & Supp. ____________________________ 1993) (adverse facts are the functional equivalent of "admissions on file" explicitly cognizable under Rule 56). Nieves makes several important concessions relevant to the appropriate "inde- pendent contractor" analysis prescribed by Flores Rom n. The ____________ mere existence of a residency contract between UPR and the Hospital, together with UPR's payment of the physicians' salaries, indicates that UPR exercised ultimate "control" over the conditions under which the doctors were to provide medical services at the Hospital. Further, UPR's provision and payment of medical malpractice insurance coverage for these physicians suggested, unless competently rebutted, an employer-employee relationship between UPR and these physicians under the UPR- Hospital contract. Cf. Flores Rom n, 90 J.T.S. 132, at 8244 ___ _____________ (because physicians' contract with state agency gave them abso- lute control over medical treatment, contract also required the doctors to pay for, and maintain in force at all times, their own malpractice insurance policies, and to reimburse government entity for all legal expenses arising from the doctors' negligent acts).18 Finally, Nieves misapprehends the fundamental message of Flores Rom n, by arguing that the Hospital's ownership of the ____________ ____________________ 18Nieves argues that UPR would not need to insure the physi- cians if they were "employees," hence absolutely immune from liability under section 4105. Of course, this is not necessarily true, since UPR, as an "arm" of the Commonwealth, could still be liable for the negligence of its immune employees up to the statutory limits prescribed by P.R. Laws Ann. tit. 32, 3077(a). See supra pp. 3-4. ___ _____ 22 medical equipment and facilities establishes that the doctors were independent contractors. The proper focus is not whether the putative principal (viz., UPR) owns or controls the equipment ____ and facilities, but whether the performing party (viz., the ____ physician) uses his own "tools" to perform the required services. Nieves readily concedes that these physicians did not own the medical equipment used to treat their patients, nor did they hire or supervise their own support personnel, nor contribute to Hospital operating expenses. Moreover, individual physicians did not contract with the Hospital to obtain privileges or accommoda- tions. Cf. Flores Rom n, 90 J.T.S. 132, at 8244 (noting that the ___ ____________ contract provided that the contract doctors would hire their own support personnel, and treat patients with their own equipment, at their own facilities). We conclude that the summary judgment record contained no competent evidence, and accordingly did not raise a colorable factual dispute, from which the district court could have made a determination that either physician was an "independent contrac- tor" of UPR. Appellees therefore were entitled to judgment as a matter of law.19 Affirmed. Affirmed. ________ ____________________ 19On appeal, Nieves argues for the first time that Dr. Gelp produced no evidence that he was a "health care professional" within the meaning of the MHPLIA. We decline to address this belated claim as it was never raised in the district court. See ___ Miller v. United States Postal Serv., 985 F.2d 9, 12 (1st Cir. ______ ___________________________ 1993). 23