BALBINO NEGRÓN MORALES, ELIZABETH NAZARIO, RALPHIE NEGRÓN, rep. por su padre con patria potestad BALBINO NEGRÓN MORALES; GUADALUPE MORALES, demandantes y recurridos, *v.* MUNICIPIO DE SAN JUAN y RESERVE INSURANCE COMPANY, demandados y recurrentes.

*Número:* R-78-31     *Resuelto:* 26.de mayo de 1978

*Géigel, Silva, Soler Favale & Arroyo* y *Gilberto L. Irizarry González,* abogados de los recurrentes; *Agustín Mangual Hernández, Plinio Pérez Marrero* y *Osvaldo Pérez Marrero,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El Municipio de San Juan y su aseguradora Reserve Insurance Company recurren de sentencia que les impuso responsabilidad por alegados daños y perjuicios y les condenó a indemnizar a Balbino Negrón Morales en las cantidades de $16,000 por sufrimientos físicos y angustias mentales y en $2,000 por pérdida de ingresos; a su esposa Elizabeth Nazario la suma de $2,000 y a su hijo Ralphie, de ocho años de edad, $1,500 por sufrimientos y angustias mentales; más costas y $1,500 para honorarios de abogado de los demandantes. La parte recurrida ha comparecido a oponerse a la solicitud de revisión y estamos en condiciones de disponer del caso y así lo hacemos en virtud de la Regla 50 de nuestro Reglamento.

El tribunal de instancia halló probado que Balbino Negrón Morales fue atendido de emergencia la noche del 3 de diciembre de 1971, por una doctora que comenzaba su primer año de residencia en cirugía en el Hospital Municipal de San Juan. Había recibido una herida punzante en el costado derecho. Radiografías tomádasle revelaban la existencia de un área de opacidad en la región afectada. No se investigó ni se hizo determinación alguna sobre ello, siendo dado de alta a las 10:00 de la mañana siguiente. Como continuara sintiendo dolor, hincadas y molestias no obstante seguir el tratamiento ambulatorio que le fue prescrito, se le hicieron nuevas radiografías el 18 de febrero de 1972 que revelaron la misma condición, es decir, la existencia de un cuerpo extraño en la región. Intervenido quirúrgicamente, se le extrajo un pedazo de la hoja de un cuchillo, de tres y media pulgadas de largo.

La prueba pericial médica estableció que de haberse extraído el pedazo de cuchillo al ser atendido originalmente, el paciente hubiese recuperado de su herida en una o dos semanas. No obstante, la recuperación se retardó hasta una o dos semanas después del 18 de febrero, cuando pudo Negrón Morales volver a trabajar. Mientras tanto él, su esposa y su hijo se vieron afectados al tener que depender de la poca ayuda que recibían de un seguro. Normalmente el demandante trabajaba seis días a la semana y devengaba un ingreso neto promedio de $30.00 diarios.

Los demandados, ahora recurrentes, impugnan la determinación sobre responsabilidad y las cuantías concedidas. No tienen razón en cuanto a lo primero. Debemos revisar, sin embargo, las cuantías concedidas.

██   No estamos ante un caso de error de juicio honesto, sino ante uno de incumplimiento con la norma que requiere que a un paciente, sea en un hospital público o privado, se le dé el mejor tratamiento posible consistente no con una práctica médica pobre, y sí con aquella práctica que llena las exigencias profesionales generalmente reconocidas por la profesión médica. *Oliveros* v. *Abréu,* 101 D.P.R. 209, 226 (1973). La doctora que atendió al paciente en el caso ante nos y examinó las placas explicó que "pensó que se podía tratar de una de varias posibilidades, entre ellas, de que la placa estaba sucia o un engrosamiento de la caja toráxica o una anormalidad congénita, pero no pensó que fuera un pedazo de metal del cuchillo con que fue herido su paciente." (Determinación de hecho Núm. 6.) Y admitió que no hizo gestión alguna para clarificar qué realmente era el área opaca, que estaba precisamente donde el paciente recibió la herida. Es obvio que no tuvo en cuenta el historial del paciente, ni el hecho de que el metal es opaco a los rayos X, circunstancia que es de conocimiento general y no necesita de pericia profesional. No hubo "un esfuerzo concienzudo del médico para enterarse de los

síntomas y de la condición del paciente," que señalamos en *Oliveros*, supra, pág. 227, como parte de la buena práctica profesional.

█ Bajo una norma menos estricta que la reconocida en *Oliveros*, fallamos en *Pérez* v. *E.L.A.*, 95 D.P.R. 745 (1968), que se incurrió en negligencia profesional al no localizar y extraer a tiempo un cuerpo extraño alojado en el tracto respiratorio de una niñita, a saber, un grano de habichuela que obstruía la tráquea y que no se revelaba en radiografías tomadas a la niña, lo cual causó su muerte por asfixia, y señalamos, citando de Hayt & Hayt, *Legal Aspects of Medical Records* (1964), lo siguiente:

"El médico que acepta un paciente debe ir más allá de un examen del mismo. Si el historial y los síntomas sugieren más de un diagnóstico, es su deber hacer diagnósticos diversos ('differential diagnosis') y emprender un proceso de eliminación mediante los exámenes conocidos y prevalecientes en la profesión."

En cuanto a las cuantías, consideramos exagerada la suma de $16,000 por sufrimientos físicos y mentales. El señor Negrón Morales, joven de 32 años de edad, no ha resultado con incapacidad física alguna, no tuvo que permanecer en cama ni estuvo impedido de caminar y moverse. Ciertamente sintió dolores y molestias por un tiempo de ocho semanas en exceso del que normalmente debió tomarle recuperarse totalmente de la herida que recibió. Nos parece que $5,000 son razonables por estos conceptos. En cuanto a su esposa y su hijo, no se ofreció prueba de sufrimientos extraordinarios, habiéndose estipulado que éstos fueron los que normalmente se tienen en esas relaciones de familia y parentesco. Estimamos razonable conceder por ello $1,000 a la esposa. Con respecto al niño, aunque los hijos no están por naturaleza ajenos a los sufrimientos de sus padres, tales debieron ser mínimos en este caso si consideramos su edad—8 años—y que no hubo prueba de que se viera afectado, que tuviera que cambiar

sus hábitos de alimentación, de estudios y de juego. Debe eliminarse la partida de $1,500 concedídale. (*)

■ La partida de lucro cesante—$2,000—está sostenida por la prueba. El argumento que ante nos hace la parte recurrente de que no debió creerse al demandante Negrón Morales de que ganaba $30 diarios como taxista por el hecho de no rendir planillas de contribución sobre ingresos es insostenible. Ciertamente es censurable que el señor Negrón Morales no haya cumplido con su obligación ciudadana de rendir planillas, pero su admisión de este hecho a riesgo de la acción que en su contra pueda tomar el Secretario de Hacienda, robustece en vez de debilitar su credibilidad. La sanción por omitir cumplir la Ley de Contribuciones sobre Ingresos no puede ser la pretendida por la parte recurrente. Correspondería ser determinado dentro del proceso administrativo o el judicial que pudiera iniciar en su contra el Departamento de Hacienda.

La cuantía de honorarios, bajo las circunstancias de este caso, se reducirá a $1,000.

*Se modificará la sentencia del tribunal de instancia en los términos indicados en esta opinión y así modificada será confirmada.*

El Juez Asociado Señor Negrón García emitió opinión concurrente y disidente en parte.

_____

(*) Valga señalar que la reclamación por daños que se sugiere en la demanda está por debajo de las cuantías concedidas por el tribunal de instancia. Su párrafo tercero alega lo siguiente:

"3. Los demandados fueron negligentes en el tratamiento, diagnóstico y atención prestado al demandante Balbino Negrón Morales, quien en efecto tenía en el interior de su cuerpo una parte metálica de una hoja de arma blanca que quedó en su cuerpo causándole dolores físicos, aprensión, angustias mentales, privaciones, especialmente de las festividades del período navideño que constituyen para él y su familia la parte más importante del año, pérdida de ingresos y gastos cuyos daños se valoran en más de $10,000.00. Como resultado de la condición de su hijo, padre y esposo, respectivamente, los demás demandantes sufrieron aprensión, angustias mentales, privaciones y alteración de su vida social y familiar, daños éstos que se valoran en más de $5,000.00 para cada uno."

El Juez Asociado Señor Díaz Cruz emitió opinión disidente a la que se unen los Jueces Asociados Señores Dávila y Martín.

—O—

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 26 de mayo de 1978

Coincido con el dictamen del Tribunal sobre responsabilidad y reduciendo a sus grados de razonabilidad las cuantías relacionadas con los daños físicos y mentales de los reclamantes. Disiento respecto a que deja intacta la suma de $2,000.00 adjudicada por la sala sentenciadora en concepto de pérdida de ingresos, impugnada ante nos, por el fundamento de que la prueba demostró que el recurrido Negrón Morales no rindió planillas de contribución sobre ingresos, aun cuando estaba obligado hacerlo por haber alegado un ingreso neto diario de $30.00 como conductor de taxis. [1]

Nos confrontamos con un mal de fondo en nuestro país producto de unas actitudes ciudadanas indebidas que constantemente burlan el principio de equidad subyacente en nuestro sistema de justicia de que todos los derechos están equilibrados por deberes; ante los tribunales se acude con las manos limpias. Recordamos la frase célebre de Lammennais, "el derecho y el deber son como dos palmeras que no dan fruto sino crecen la una al lado de la otra." Es inconcebible que sin sanción ni consecuencia jurídica alguna se invoque ante la majestuosidad de la ley un derecho a resarcimiento, y por otro lado se vulnere y niegue eficacia al deber correlativo de rendir planilla de contribución sobre ingresos. Frente

---

[1] La Sec. 58 de la Ley de Contribuciones sobre Ingresos de 1954—Núm. 91 de 29 de junio de 1954 según enmendada—impone a toda persona casada con ingresos mayores a $2,000.00 la obligación de rendir. (13 L.P.R.A. sec. 3058.) Este deber es irrespectivo de que en última instancia el contribuyente no venga obligado a pagar contribución *alguna*, por razón de otros factores.

a este hecho, la sola declaración del demandante Negrón Morales sobre sus alegados ingresos, sin apoyo en otra prueba testifical ni documental, hacen su testimonio uno indigno de crédito alguno e insuficiente para sostener dicha partida.

Respetuosamente someto a la lógica y sentido común de todos que sobre este extremo, la decisión de hoy constituye un vivo ejemplo de paternalismo judicial—que aunque bien intencionado—resulta equivocado.

—0—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se unen los Jueces Asociados Señores Dávila y Martín.

San Juan, Puerto Rico, a 26 de mayo de 1978

Disiento por entender que la equivocación de la doctora que atendió al demandante en emergencia la noche del 3 de diciembre de 1971, no se debió a negligencia, sino a error de diagnóstico. Ella era una residente de cirugía sin conocimiento especializado en radiología, que es una de las ramas de especialización de la medicina. El Municipio de San Juan, dentro de sus limitaciones fiscales, no puede proveer servicios médicos altamente especializados en sus salas de emergencia, que produzcan al instante un diagnóstico correcto. La Ciudad no descuidó la salud del demandante. A sólo seis semanas de haberse producido la herida, se le tomaron nuevas radiografías que descubrieron la presencia de un pedazo de metal que le fue extraído sin demora.

Nuestra sociedad necesita ser ilustrada en el principio de que la mano que cura no alcanza el grado de agravio social de la mano que hiere. Este es el caso del ciudadano víctima de la violencia de un agresor que recupera su salud por la intervención de los servicios médicos del Municipio. No tiene más queja contra el hospital público que el argumento de que pudo haber sanado unas semanas antes si aquella doctora que lo

atendió en emergencia hubiese sido una experta en lectura de radiografías.

Su acción de daños y perjuicios va en detrimento y disminución de los recursos totales de la Ciudad para proveer atención médica de emergencia a todos los que después de él y en circunstancias críticas que no eran las suyas, lleguen noche tras noche en las ambulancias. Estimo que la medida de responsabilidad de un hospital público debe atemperarse al diseño integral en que dicha institución sirve a la preservación de la vida y la salud de todos los residentes de la Capital. No considero que un hospital del pueblo, sin propósito alguno de lucro, deba enfrentarse, encima de sus grandes dificultades, a una puntillosa revisión sobre lo que en cada caso pudo o debió hacer cada uno de sus médicos y empleados, como si funcionaran en el sosiego de un laboratorio de investigación científica; ni que sus errores de juicio, producto muchas veces de la simple extenuación, deban sancionarse con el rigor que la acción torticera reserva para el común causante de daño. El trabajo abrumador que pesa sobre el personal de estos hospitales, el interminable tráfago de casos en que peligra la vida del paciente, la demanda y exigencia de los pacientes sobre la capacidad intelectual y física, no es precisamente lugar para exigir infalibilidad. Es en contraposición a esta realidad circunstancial que hemos de evaluar la conducta de la médica en sala de emergencia y ésa es la razón por la que considero su error uno de diagnóstico, y no de negligencia. Creo que la práctica de la medicina en el ritmo vertiginoso de la emergencia no debe ser penalizada porque se tomó, o no se tomó una radiografía (pues también se demanda por no tomarlas), si el resultado final ha sido la restitución al paciente a su vida saludable y laboriosa.

Debe imponerse el peso del reproche jurídico a la mala práctica médica sólo donde ésta asome con claros relieves.

La responsabilidad de un hospital por un descuido de su empleado no ha de medirse con la severidad con que se juzga

un asesinato o un atentado a la vida. "Para que pueda ser estimada la responsabilidad civil extracontractual es necesaria la concurrencia de diversos *requisitos* o supuestos, integrados por la acción u omisión, la lesión o daño, la antijuridicidad o ilicitud, la culpa del agente y la relación de causalidad entre el daño y la falta, siendo indudable, por lo que a la ilicitud y la culpa se refiere, que su valoración o calificación suscita una cuestión de Derecho que puede ser discutida en [revisión]." Bonet Ramón, *Código Civil Comentado*, Art. 1.902, pág. 1499, Segunda Edición, 1962.

El motivo o propósito del demandado es elemento determinante de su responsabilidad, al punto en que existiendo un claro choque de intereses entre las partes, el valor social del objetivo puede preponderar el daño inferido y prevalecer a costa de la reclamación del demandante. Prosser, *Law of Torts*, pág. 26, Cuarta Edición, 1971. En la legislación sobre daños y perjuicios hay que buscar un ajuste entre el interés social en la vida del individuo y el interés social en la seguridad de todos, que es el general. Ni la teoría de culpa como base de responsabilidad ni una de responsabilidad sin culpa pueden apurarse hasta sus límites lógicos. Radbruch, *Rechtsphilosophie*, Sec. 9, 3ª Ed., según citado en Pound, *Jurisprudence*, Tomo 1, pág. 173 (1959).

Los comprometidos recursos de la Ciudad en estos tiempos difíciles, deben sufrir merma únicamente cuando su inexcusable negligencia sea la causa de un daño que en su magnitud pueda equipararse a la necesidad que de esos recursos tiene la humanidad que fluye constantemente a los hospitales públicos. El presente caso no tiene esa dimensión.