# 97 DTA 120

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN**

THE FIRST NATIONAL BANK OF BOSTON
Demandante-Apelado

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO,
SECRETARIO DE JUSTICIA Y EL DEPARTAMENTO DE JUSTICIA
Demandados-Apelantes

Núm. KLAN-95-00910

San Juan, Puerto Rico, a 19 de mayo de 1997

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Negroni Cintrón, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

The First National Bank of Boston *("Banco")* y Delta Petroleum (P.R.) Ltd., *("Delta")* otorgaron un contrato de financiamiento mediante el cual el Banco le concedió a Delta una línea de crédito hasta diez millones de doláres ($10,000,000.00) para la adquisición de petróleo, derivados de éste y para financiar sus cuentas a cobrar. En garantía y como parte de la misma transacción, Delta (1) otorgó un contrato de refacción industrial que fue inscrito en el Registro de Contratos de Refacción Industrial y Comercial de Mayaguez, (2) le cedió al Banco todas sus cuentas a cobrar y (3) estableció la cuenta número 008-40551-2 en el Banco Central de Mayaguez en la cual únicamente depositaría los pagos recibidos de las cuentas a cobrar. Como parte del acuerdo de financiamiento, el Banco podía retirar las cantidades depositadas en esta cuenta mediante transferencias electrónicas con el fin de acreditarlas a la deuda de Delta con el Banco. Delta estableció, además, en el mismo Banco una cuenta operacional con el número 10-0454-0.

Un tiempo más tarde, Delta y su presidente, Mario Oscar García Quintero, fueron acusados por infringir la Ley Núm. 33 del 13 de julio de 1978, según enmendada, 25 L.P.R.A. sec. 971 *et seq.*, conocida como la *"Ley contra el Crimen Organizado"*. Casi simultáneamente el Estado inició un proceso de confiscación de bienes alegadamente pertenecientes a Delta. El 29 de diciembre de 1992 el Banco fue notificado de una orden de confiscación de los fondos depositados en la cuenta operacional número 10-0454-0 que Delta mantenía con el Banco. El 5 de enero de 1993 el Departamento de Justicia de Puerto Rico confiscó los depósitos de la cuenta número 008-405-51-2 que Delta mantenía con el Banco Central de Mayaguez, pero no se la notificó al Banco.

El 25 de enero de 1993 el Banco impugnó las confiscaciones de estas dos cuentas. Alegó que era un adquirente de buena fe de las propiedades confiscadas; que desconocía o no podía conocer que la propiedad podía ser confiscada; que los fondos confiscados provenían de la cuenta del inventario de Delta y de las cuentas por cobrar de ésta; que era un tercero inocente con derecho sobre los fondos confiscados; que estos fondos no constituian propiedad utilizada en la comisión de los delitos imputados a Delta y finalmente que no había sido notificada de la confiscación de los fondos en la cuenta 808-405-51-2 que Delta había establecido en el Banco Central.

Emplazado, el Estado contestó la demanda mediante un escrito fechado el 10 de marzo de 1993 y negó prácticamente todas las aseveraciones incluidas en la demanda presentada por el Banco. Entre otras defensas afirmativas, expuso que el Banco carecía de legitimación activa; que el tribunal carecía de jurisdicción y que el Banco carecía de una causa de acción. En una conferencia celebrada el 2 de noviembre de 1993 para examinar el estado del pleito, el tribunal fue informado de que Delta había presentado un caso en el Tribunal de Quiebras para el Distrito de Puerto Rico en el que se consideraba la misma controversia que levantaba la demanda del Banco, por lo que paralizó el pleito civil que examinamos.

En vigor la paralización, la Sala de San Juan del anterior Tribunal Superior, absolvió a Delta de las acusaciones por violación de la Ley contra el Crimen Organizado, *supra*, que se le habían formulado.

Basado en este dictamen y mediante moción al efecto el Banco solicitó que se dejaran sin efecto las confiscaciones decretadas y que el tribunal ordenara la devolución de los fondos confiscados. El tribunal de instancia le concedió al Estado término para que expresara su posición y lo hizo. Presentó una moción en la que se opuso a la solicitud del Banco basándose primordialmente en que la desestimación de los cargos criminales contra Delta no conllevaba la desestimación automática de la orden de confiscación. Sometió separadamente un extenso memorando de derecho de 21 páginas en apoyo de su posición. El Banco también presentó un memorando de igual tamaño acompañado de prueba documental. Posteriormente, las partes sometieron memoranda de réplica adicional a la ya

presentada.

Sometido el asunto, el tribunal *a quo* accedió a la solicitud de Delta y emitió el dictamen que el Estado apela ante nos. Mediante éste, ordenó que se levantaran las confiscaciones impugnadas.

En su escrito, el Estado nos señala en términos generales que el foro apelado erró *"... al dictar sentencia sumariamente en el caso de epígrafe dejando sin efecto las órdenes de confiscación objeto del presente litigio."* Sin embargo, al discutir este amplio señalamiento elabora y argumenta específicamente que el tribunal se equivocó (1) pues el Estado no tuvo oportunidad para presentar evidencia en apoyo de su posición, ya que no había base para pensar que la intención del tribunal era resolver el caso por la vía sumaria; (2) al resolver que no se le notificó al Banco la confiscación de los fondos en el Banco Central, ya que esta cuenta aparecía a nombre de Delta y no del Banco; (3) al resolver que el Banco era un tercero inocente que actuó de buena fe sin participación en el acto delictivo; (4) al resolver que procedía el pago de intereses; y (5) al resolver que la desestimación de los cargos criminales contra Delta no produce automáticamente la desestimación de la confiscación civil realizada.

Contando con el beneficio del apéndice conjunto y de los alegatos de las partes, estamos en posición de resolver.

Concluimos que el Estado no tiene razón y que procede que confirmemos el dictamen apelado por los siguientes fundamentos.

I

La moción presentada por el Banco para que se dejaran sin efecto las órdenes de confiscación era evidentemente una moción de sentencia sumaria, aunque no haya sido denominada como tal, pues pretendía que se le concediera sumariamente el remedio que reclamaba en la demanda a base de la teoría de derecho que expuso en la moción. Como vimos antes, la demanda presentada por el Banco impugnaba la legalidad de las órdenes de confiscación expedidas y solicitaba como remedio que éstas se dejaran sin efecto. La lectura de la moción que promovió el dictamen apelado solicitaba que el tribunal de instancia concediera sumariamente el remedio solicitado en la demanda, toda vez que el Banco entendía y postulaba que el hecho de que Delta hubiese sido absuelta perentoriamente de los cargos criminales que se le imputaban necesariamente conllevaban que las órdenes de confiscación impugnadas se dejaran sin efecto.

Como bien señala el Banco en su alegato, la lectura del escrito de apelación sugiere que la tesis que realmente postula el Estado es que el tribunal de instancia no podía conceder el remedio solicitado sumariamente porque no fue informado en la moción que el Banco presentó para que se dejaran sin efecto las órdenes de confiscación de los demás fundamentos en los que el tribunal apoyó su dictamen. Al así argumentar, el Estado no tiene razón.

El apéndice conjunto sometido revela que luego que el Banco presentara su moción para que se dejaran sin efecto las órdenes de confiscación, el 12 de enero de 1995 el tribunal apelado emitió una orden dirigida a la parte apelada para que replicara en diez (10) días a esta moción, (Apéndice Conjunto, pág. 203), lo que el Estado hizo. (Apéndice Conjunto, págs. 204-205). El 30 de enero de 1995, el tribunal de instancia emitió una segunda orden instruyendo al Banco a replicar a la moción de la parte apelada y ordenándole a ambas partes a presentar memoranda de derecho, dentro del término de treinta (30) días (Apéndice Conjunto, pág. 228).

En cumplimiento de esta orden, el 9 de febrero de 1995 el Banco sometió una *"Réplica a Moción en Cumplimiento de Orden",* en la cual no sólo refutó la moción previamente presentada por la parte apelante, sino que expresamente y en lo pertinente al señalamiento del Estado indicó lo siguiente:

*"9. Es la posición de Bank of Boston que con lo antes expuesto existen motivos suficientes para dejarse sin efecto la confiscación realizada. Sin embargo, y a tenor con la orden emitida por este Honorable Tribunal el 30 de enero de 1995, Bank of Boston presentará un Memorando de Derecho dentro del término de treinta días en apoyo de su solicitud de que se deje sin efecto la orden de confiscación. En su memorando Bank of Boston expondrá motivos adicionales por **los cuales procede que se dicte sentencia sumaria dejando sin efecto la confiscación.** Entre otras cosas, Bank of Boston*

*demostrará que la confiscación realizada no procedía, ya que la Ley Uniforme de Confiscaciones de Puerto Rico, (34 L.P.R.A. § 1723 et seq.) sólo autorizaba, al momento de llevarse a cabo la confiscación, propiedad utilizada en relación a la comisión del alegado delito, mientras que los fondos confiscados por el ELA se originan de cuentas por cobrar genuinas; porque Bank of Boston es un tercero inocente según éste es definido por nuestra jurisprudencia y por las decisiones del Tribunal Supremo de los Estados Unidos; y porque la confiscación de los fondos que estaban depositados en el Banco Central Hispano es nula, ya que el ELA nunca notificó a Bank of Boston sobre dicha confiscación, en violación expresa del Artículo 4 de la Ley Uniforme de Confiscaciones (34 L.P.R.A. § 1723 (b)."* (Ap. pág. 231-232) (Enfasis nuestro.)

Como puede apreciarse de lo antes citado, el Banco expresamente apercibió al Estado que solicitaba que se dejaran sin efecto las confiscaciones realizadas, no solamente porque se había absuelto a Delta en el juicio criminal, sino a base de los argumentos indicados en la moción y que fueron considerados por el tribunal.

Así las cosas, las partes sometieron su memoranda de derecho un mes después de que el Banco anunciara su intención de solicitar que se dejaran sin efecto las confiscaciones, a base de todos los argumentos antes señalados. En su memorando de derecho, (Apéndice Conjunto págs. 236-241), el Banco discutió con apreciable particularidad todos y cada uno de los fundamentos legales por los cuales debían dejarse sin efecto las órdenes de confiscación ■ y expuso los hechos pertinentes que no estaban en controversia. En fin, le informó adecuada y efectivamente al Estado cuáles eran los argumentos utilizados para apoyar su reclamo. En tales circunstancias, la posición del Estado de que desconocía que se enfrentaba a una solicitud de sentencia sumaria en la que se planteaban cuestiones específicas de derecho resulta patentemente inmeritoria.

Más aún. El Estado nada hizo para replicar a los señalamientos formulados o para refutar los hechos enumerados por el Banco en su memorando de derecho. No presentó moción alguna para solicitar prórroga para replicar o para limitar los argumentos que entendía debían ser considerados por el tribunal de instancia. Se limitó a esperar durante un período de más de tres meses a que el tribunal de instancia resolviera la moción presentada. Su queja ahora resulta tardía.

## II

El argumento del Estado en cuanto a que el tribunal *a quo* se equivocó al concluir que la confiscación de la cuenta del Banco Central de Mayaguez era nula porque no se le notificó al Banco dentro del término establecido por el Artículo 4 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723 (B), es igualmente inmeritorio.

Son hechos que surgen de los documentos obrantes en autos y que no fueron controvertidos ante el tribunal de instancia por el Estado, que la cuenta número 008-40551-2 de Delta en el Banco Central se había establecido a nombre de Delta/Bank of Boston Agency Account (Apéndice Conjunto, pág. 258), mediante una carta que formaba parte de los récords del Banco Central y que estaba accesible al Departamento de Justicia. Esa carta incluia instrucciones específicas de que el dinero que se depositara en la cuenta era para el beneficio exclusivo del Banco y expresaba que sólo éste podía retirar los fondos depositados en la cuenta con el fin de aplicarlos al pago de la línea de crédito extendida por el Banco. (Apéndice Conjunto, págs. 258-260).

Esta carta fue ofrecida como prueba por el Banco en apoyo de su moción de sentencia sumaria como anejo a su Memorando de Derecho en Apoyo a que se Deje sin Efecto Confiscación, (Apéndice Conjunto, págs. 236-260.) y no fue controvertida. De ella se puede inferir sin mayores dificultades que el Estado tenía conocimiento, desde que realizó la confiscación de los fondos en el Banco Central; que el Banco tenía un interés en dichos fondos y que esa entidad bancaria era la única que podía retirar los fondos de esa cuenta bancaria. En esas circunstancias, la falta de notificación de la confiscación al Banco constituyó una clara violación a lo requerido por el Artículo 4 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723(b). ■

Por consiguiente, el tribunal *a quo* no incurrió en error alguno al resolver que el Estado no le notificó al Banco la confiscación de los fondos en la cuenta número 008-40551-2 en el Banco Central, pues el Estado estaba obligado a notificarle al Banco por tratarse de una persona con interés conocido

en la propiedad ocupada. Artículo 4 de la Ley Uniforme de Confiscaciones, *supra*. Véase, además, *Srio. de Justicia v. Tribunal Superior*, 96 D.P.R. 116, 122 (1968). Tampoco erró al resolver que, debido a la ausencia de notificación, la confiscación de los fondos depositados en la cuenta número 008-40551-2 en el Banco Central es ineficaz y debe dejarse sin efecto. Véase: *Colón Medina v. Secretario de Hacienda*, 109 D.P.R. 540 (1980); *Vázquez Fontánez v. Tribunal Superior*, 102 D.P.R. 396 (1974).

## III

En tercer término y en lo referente a que el tribunal *a quo* se equivocó al resolver que el Banco era un tercero inocente, el apelado tampoco tiene razón. Un cuidadoso examen del Apéndice Conjunto sometido por las partes revela que desde que se presentó la demanda jurada, el Banco alegó y expuso bajo juramento los hechos por los cuales entendía que era un tercero inocente. El Estado nunca refutó esos hechos ante instancia. Es a este Tribunal al que por vez primera le alega que el Banco tenía conocimiento previo de que el presidente de Delta, Lcdo. Mario García Quintero, estaba siendo investigado por el Departamento de Justicia y que aun así el Banco le renovó el contrato de financiamiento comercial a Delta, insinuando con ello que el Banco conocía de la procedencia ilegal de los fondos depositados en las cuentas confiscadas. Más aún, el Estado tampoco nos ofrece la prueba que alegadamente demuestra o establece lo que ahora alega.

Un demandado contra quien se promueve una sentencia sumaria tiene que controvertir los hechos pertinentes a la controversia ante el tribunal ante el cual se ventila la causa, si interesa derrotar la adjudicación sumaria que se promueve. *Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell*, 117 D.P.R. 714, 720-721 (1986). No puede esperar a hacerlo ante el foro apelativo que revisa el dictamen emitido por el tribunal de instancia concediendo la sentencia sumaria. Si no lo hace cuando y como es debido se expone a que el tribunal de instancia disponga que los hechos demostrados por el promovente no han sido controvertidos, como sucedió en el caso de marras.

## IV

Examinemos ahora el reclamo del Estado de que el foro sentenciador se equivocó al condenarlo a satisfacer intereses sobre los fondos cuyas confiscaciones fueron dejadas sin efecto. Esencialmente, el Estado postula que no procede el pago de intereses sobre el importe de los fondos confiscados una vez se ha determinado que la confiscación es ilegal. Por supuesto, el Banco sostiene lo contrario. Razona que dejó de recibir intereses de los fondos confiscados.

El artículo 13 de la Ley Uniforme de Confiscaciones, 34 LPRA sec. 1723k-1, dispone lo siguiente:

*"Una vez transferida la custodia a la Junta por el funcionario que ocupó la propiedad, y después de transcurridos los términos mencionados en la sec. 1723k de este título, la Junta podrá disponer de la propiedad a tenor con este Capítulo y con los reglamentos que apruebe.*

*En aquellos casos que el tribunal decrete la ilegalidad de una confiscación, la Junta devolverá la propiedad ocupada al demandante o en caso de que haya dispuesto de la misma, el Estado Libre Asociado de Puerto Rico le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más intereses de conformidad con la Regla 44.3 de Procedimiento Civil, Ap. III del Título 32, a partir de la fecha de la ocupación. De la cantidad correspondiente al demandante, podrán descontarse los gastos realmente incurridos por la Junta en la reparación de la propiedad en los casos que aplique.*

*El demandante que interese reclamar la devolución del vehículo o la suma a que tenga derecho conforme al párrafo anterior presentará ante el Secretario de Justicia copia certifica*da de la resolución o sentencia que sea final y firme para que la Junta cumpla con lo aquí establecido." Interpretada por el Tribunal Supremo de Puerto Rico en el caso de *Alejandro Rivera v. E.L.A.*, Op. del 10 de abril de 1996, dicho Foro concluyó que *"... de una lectura del artículo en controversia surge claramente que los intereses sólo procederán cuando se devuelva una suma de dinero por haberse dispuesto de la propiedad ocupada. Nada se provee en cuanto al pago de intereses en caso de que se devuelva la propiedad ocupada. Nótese que el referido artículo contempla dos alternativas, a saber: (1) devolver la propiedad ocupada al demandante o, (2) en caso de que se haya dispuesto de la misma, se pagará una suma de dinero."* Concluyó que estaba claro que la intención del legislador fue

la de imponer el pago de intereses solamente en aquellos casos en que se hubiese dispuesto de la propiedad del perjudicado. Entendió, además, que le correspondía a la Rama Legislativa enmendar la Ley Uniforme de Confiscaciones para extender el pago de intereses a aquellos casos en que se devuelve la propiedad confiscada. En tales circunstancias, el tribunal de instancia se equivocó al resolver que como el bien confiscado era dinero en efectivo procedía el pago de intereses. El estatuto aplicable no distingue entre bien mueble y dinero en efectivo. Debe modificarse la sentencia apelada para dejar sin efecto aquella parte de la misma que le impone al Estado la obligación de pagarle intereses al Banco apelado sobre los fondos confiscados cuya devolución ordenó.

## V

Finalmente concluimos que el tribunal de instancia tampoco erró al resolver que la desestimación de los cargos contra Delta justificaba la desestimación de las confiscaciones de los fondos pertenecientes al Banco apelado.

Toda vez que las acusaciones criminales contra Delta y las confiscaciones ordenadas descansan sobre la misma conducta criminal por la que se acusó a Delta, la absolución perentoria en los méritos decretada en cuanto a las acusaciones criminales presentadas contra Delta justificaba la desestimación de las confiscaciones de los fondos pertenecientes al Banco efectuadas por el Estado, aunque esta institución no era la acusada. *Del Toro v. E.L.A.,* Op. del 12 de septiembre de 1994, **94 J.T.S. 119;** *Carlo v. Secretario de Justicia,* 107 D.P.R. 380 (1978).

Delta fue acusada de haber infringido el Artículo 3(a) de la Ley contra el Crimen Organizado, 25 L.P.R.A. sec. 971b(a). ■ Desfilada durante seis semanas la prueba del Ministerio Público en el juicio celebrado, el tribunal decretó la absolución perentoria de Delta por dicho cargo. Dejó de estar en controversia, por tanto, si Delta había cometido delito alguno, por lo que toda vez que los fondos confiscados no constituyen propiedad utilizada en relación con la comisión de delito y que se tratan de fondos recibidos en pago de cuentas legítimas pendiente de cobro de conformidad con los acuerdos de financiamiento realizados de buena fe y legítimamente entre Delta y el Banco apelante, la absolución perentoria de Delta constituyó una absolución en los méritos que impedía colateralmente que se dejaran en vigor las confiscaciones decretadas originalmente por el Estado.

## VI

En el pleito que examinamos, el tribunal de instancia adjudicó el remedio que solicitaba el Banco mediante el mecanismo procesal de sentencia sumaria, bajo la premisa de que no existía controversia alguna sobre el hecho de que Delta no había cometido el delito por el que se le acusó criminalmente. Después de estudiar los escritos del Banco para que se dictase sentencia sumaria y los que en oposición presentó el Estado, el tribunal de instancia determinó que procedía que se dejaran sin efecto las confiscaciones decretadas. La prueba documental presentada por el Banco era suficiente y los escritos del Estado no presentaban controversia material alguna que ameritara su dilucidación en un juicio en los méritos.

La Regla 36.3 de las de Procedimiento Civil (32 LPRA Ap. III, R. 36.3) establece que se podrá dictar sentencia sumaria *"si las alegaciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostrasen que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria... Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. "* El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Solamente debe ser dictada una sentencia sumaria *"en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. "* *Medina Morales v. Merck, Sharp & Dhome,* Op. de 7 de abril de 1994, **94 J.T.S. 52,** 11786; *Cuadrado Lugo v. Santiago Rodríguez,* Op. de 30 de abril de 1990, **90 J.T.S. 59,** 7702; *Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, supra.* Mediante dicho mecanismo procesal se pretende obtener un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia sobre hechos materiales del litigio. *Revlon Realistic, Inc. v. Las Américas Trust Company,* Op. de 15 de marzo de 1994, **94 J.T.S. 27,** pág. 11613; *Rivera Santana v. Superior Packing,* Op. de 9 de diciembre de 1992, **92 J.T.S. 165,** pág. 10165; *Tello Rivera v. Airlines,* 119 D.P.R. 83 (1981).

El fin de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. *Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras,* Op. de 25 de agosto de 1993, **93 J.T.S. 127,** 11079: *Corp. Presiding Bishop, supra,* pág. 720; *Cuadrado Lugo, supra,* pág. 7702.

Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *Corp. Presiding Bishop, supra,* pág. 721.

Al considerar una Moción de sentencia sumaria, el tribunal presumirá ciertos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas admisibles que forman parte del expediente. El tribunal (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del Tribunal, *Medina v. Merck, supra,* pág. 11786; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.

El tribunal no deberá dictar sentencia sumaria cuando (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *Corp. Presiding Bishop, supra,* págs. 722-723, *Cuadrado, supra,* pág. 7702.

En el pleito que nos ocupa, el Banco presentó con su moción solicitando sentencia sumaria copia de los contratos pertinentes suscrito por las partes. Obraba en autos copia jurada de la demanda de la cual surgían hechos específicos no conclusorios pertinentes a la controversia. Mediante dichos documentos el Banco estableció claramente los hechos pertinentes a su reclamo quedando solamente pendiente determinar si como cuestión de derecho procedía el reclamo que formulaba. El Estado no se opuso en la misma calidad y no controvirtió ante instancia ninguno de los hechos demostrados por el Banco. Debido a ello, solamente discutió el derecho que estimaba aplicable.

Toda vez que de los documentos obrantes en autos surge con meridiana claridad que al resolver la moción de sentencia sumaria a favor del promovido el tribunal de instancia tuvo ante sí todos los hechos esenciales para juzgar si la sentencia absolutoria de Delta en el caso criminal impedía que se mantuvieran en vigor las órdenes de confiscación impugnadas, sólo quedaba que el tribunal *a quo* aplicara el derecho. Como hemos visto, así lo hizo y con corrección. Procedía, por tanto, que el tribunal de instancia adjudicara sumariamente si el Banco tenía derecho o no al reclamo que había formulado en su demanda.

## VII

Por los fundamentos que anteceden, se dicta sentencia modificatoria de la apelada a los únicos fines de dejar sin efecto aquella parte que condena al Estado a satisfacer intereses legales sobre los fondos confiscados cuya devolución se ordenaron. Así modificada, se confirma.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 97 DTA 120**

**1.** El presidente de Delta, Lcdo. Mario García Quintero, fue encontrado culpable el 14 de diciembre de 1994 de varios delitos relacionados con la posesión de traspaso de documentos falsificados para defraudar al Pueblo de Puerto Rico en evitación del pago de arbitrios.

**2.** Los fundamentos discutidos fueron:

*"1. Que las confiscaciones realizadas debían dejarse sin efecto, al no haberse cometido el delito a base del cual se confiscaron los fondos en controversia. (Ap., págs. 241-242);*

*2. Que el Banco es un tercero inocente. (Ap., págs. 242-248);*

*3. Que de conformidad con las disposiciones de la Ley Uniforme de Confiscaciones (34 L.P.R.A. § 1723 et. seq), las confiscaciones de las cuentas bancarias no eran válidas (Apéndice conjunto, págs. 253-255)."*

**3.** La referida sección dispone lo siguiente:

*"La notificación [de la confiscación]* **se hará** *en forma fehaciente,* **dentro de los quince (15) días siguientes a la ocupación,** *mediante su envío por correo con acuse de recibo* **a la dirección conocida del dueño, encargado o persona con derecho o interés en la propiedad ocupada."* (Enfasis nuestro.)

**4.** *"Actividades prohibidas*

*(a) Será ilegal para cualquier persona que haya recibido ingreso derivado directa o indirectamente de una actividad criminal o de la recaudación de una deuda ilegal, en que dicha persona haya participado como autor, según este término se define en la sec. 3172 del Título 33, utilizar o invertir, directa o indirectamente, todo o parte de dicho ingreso, o el producto del mismo, en la adquisición de algún interés en, o en el establecimiento u operaciones de cualquier empresa o negocio."*