Negrón Soto, Juez Ponente
*1097 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes, el Sr. Raimón O. Pagán Muñiz, su esposa la Sra. Carmen Ana Figueroa Lugo, y sus hijos Osvaldo A. y Ricardo L. Pagán Figueroa, presentaron el presente recurso de apelación para que revisemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se declaró sin lugar una demanda en daños y perjuicios incoada por éstos.
Estamos de acuerdo con la determinación del Foro apelado, por lo que procede confirmar su dictamen. Veamos.
I
El 30 de marzo de 1988 el Sr. Pagán Muñiz sufrió de fuertes dolores en la espalda y el pecho mientras realizaba sus labores para el Departamento de Educación. En esta ocasión fue llevado al Centro de Salud de Santa Isabel, donde lo examinaron y lo enviaron a su casa. El Sr. Pagán Muñiz continuó con los fuertes dolores en el pecho y en la espalda por lo que al día siguiente (31 de marzo) acudió a la Sala de Emergencias del Hospital Dr. Pila de Ponce. Allí fue atendido por el Dr. Mariano García Colón, quien ordenó su hospitalización como paciente del Fondo de Seguro del Estado, en lo sucesivo el Fondo. Este procedió a examinar el historial del paciente y a evaluarlo.
Surge de las determinaciones de hechos del Tribunal de Primera Instancia que al Sr. Pagán Muñiz le fue diagnosticado un "sprain" de pecho y espalda por causa de una caída sufrida en el trabajo. El Dr. García Colón consultó con un especialista en cirugía, concluyendo que era necesaria la hospitalización del Sr. Pagán Muñiz. Como parte de dicha evaluación se le tomaron radiografías, se le hicieron contajes de sangre, SMA (estudio químico de la sangre), y pruebas de Amilasa en la orina y en la sangre. Durante la hospitalización del Sr. Pagán Muñiz, éste fue sometido a consultas con el Dr. Ramón del Prado, Neurocirujano, Dr. Orlando L. Vázquez Torres, Neumólogo, y el Dr. Villalba, Fisiatra. 
El 9 de abril de 1988 el Dr. García Colón ordenó unas pruebas de "Benze Jones" y "Electrophoresis". Estas pruebas se utilizan para la detección de mieloma. Usualmente el resultado de dichas pruebas se demoraban de uno a cinco días, respectivamente. De acuerdo al Tribunal de Primera Instancia en el récord del Hospital Dr. Pila no se reflejó si dichas pruebas fueron, en efecto, realizadas. Tampoco obra en autos dicha evidencia.
El 10 de abril de 1988, el Sr. Pagán Muñiz fue dado de alta. No obstante, el Dr. García Colón indicó en la nota de alta, lo siguiente: "paciente con accidente al estar trabajando, fractura vértebra T-6, T-7. Dolor debido a espasmo muscular. Se le dio fisioterapia y descanso que mejoró, pero no eliminó por completo el dolor. Para ser dado de alta y continuar en el dispensario FSE [sic] en una semana". En esta ocasión la esposa del Sr. Pagán Muñiz le cuestionó al doctor García Colón de porqué le daba de alta si él continuaba sintiendo dolores.
El 12 de abril de 1988, el Sr. Pagán Muñiz acudió a su cita en el Fondo y una doctora le recomendó que fuese hospitalizado en el Hospital Regional de Ponce, donde no quisieron admitirlo. Por tal razón acudió a la Sala de Emergencias del Hospital de Damas, donde fue evaluado por el Dr. Valdés. Este lo refirió a la Dra. González, internista, quien lo examinó. Ese mismo día, el paciente fue dado de alta de la Sala de Emergencias.
Estando ya en su residencia, el Sr. Pagán Muñiz continuó quejándose de fuertes dolores. Por tal motivo el Dr. Antúnez, amigo de los apelantes, examinó al paciente el 27 de abril de 1988 y lo refirió para que fuese admitido al Hospital de Damas. Esa misma noche fue hospitalizado y le fue diagnosticado mieloma múltiple. Fue dado de alta el 19 de mayo de 1988 y falleció el 12 de noviembre de 1989.
El 29 de marzo de 1989, los apelantes presentaron una demanda en la cual le imputan negligencia al Dr. García Colón por no haber diagnosticado el mieloma que tenía el paciente. Sostienen los apelantes que, a pesar de que dicha condición es fatal con una expectativa de vida de 12 a 18 meses, de haberse detectado la condición por el Dr. García Colón cuando el paciente estuvo hospitalizado en el Hospital Dr. Pila, ello hubiere evitado o aminorado el dolor y malestar que sentía el Sr. Pagán *1098 Muñiz. (Determinación de Hecho Núm. 13 de la Sentencia, pág. 5).
Luego de varios trámites procesales, el Tribunal de Primera Instancia desestimó la demanda contra el Hospital Dr. Pila bajo el fundamento de que como el Dr. García Colón no era empleado de dicho Hospital, éste no respondía de la negligencia de dicho médico.
El Tribunal apelado determinó que el Dr. García Colón ejerció "...un grado razonable de cuidado y el tratamiento fue uno adecuado,...lie gando a un diagnóstico adecuado, aunque al final resultara incorrecto." (Página 8 de la Sentencia) Además, concluyó que el Dr. García"... "tomó las medidas razonables para tratar de llegar a un diagnóstico", idem, por lo que estaba exento de responsabilidad alguna. En consecuencia, declaró sin lugar la demanda.
Inconforme con esta determinación, los apelantes presentaron el presente recurso cuestionando la determinación del Tribunal de Primera Instancia a los efectos de que no hubo negligencia al dar de alta al paciente.
II
El alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las Reglas de Procedimiento Civil, según enmendadas, 32 L.P.R.A. Ap. Ill, R 43.2, que en lo pertinente dispone que:

"...Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos...".

La apreciación de la prueba efectuada por un Tribunal de Primera Instancia merece gran deferencia, por lo que sólo "[ejn ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad o error manifiesto nos abstendremos de intervenir en cuanto al trasfondo fáctico. Pérez Cruz v. Hospital La Concepción, 115 D.P.R.721 (1984)". Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985). Ante una apreciación errónea de la prueba, sólo en esas circunstancias es que procede dejar sin efecto las determinaciones de hechos del Tribunal de Primera Instancia, ya que las mismas no tienen credenciales de inmunidad frente a la función revisora de un Foro apelativo. Véase Ramos Acosta v. Caparra Dairy Inc., 113 D.P.R. 357, 365 (1982) y Vélez v. Srio. de Justicia, 115 D.P.R. 553, 545 (1984).
Además, ha dicho nuestro Tribunal Supremo que en ausencia de una transcripción de la evidencia presentada en el expediente de revisión habremos de presumir que la parte apelante acepta sin reservas la situación fáctica determinada por el Tribunal de Primera Instancia. Acosta Vargas v. Tió, 87 D.P.R. 262, 264 (1963). Además véase: Benitez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990).
En ausencia de dicha exposición narrativa consideramos que los apelantes han aceptado la situación fáctica que hiciera el Tribunal de Primera Instancia en su sentencia.
Ha sido reiteradamente resuelto que:
"[l]a norma mínima de cuidado médico exigible legalmente en casos de impericia en Puerto Rico, al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, es aquella atención que a la luz de los modernos medios de comunicación y enseñanza y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, satisfacen las exigencias generalmente reconocidas por la profesión. López v. Hosp. Presbiteriano, Inc., 107 D.P.R. 197 (1978); Negrón v. Municipio de San Juan, 107 D.P.R. 375 (1978); González v. E.L.A., 104 D.P.R. 55 (1975); Morales v. Hospital Matilde Brenes, 102 D.P.R. 188 (1974); Oliveros v. Abreu, 101 D.P.R. 209, 226 (1973); Cruz v. Centro Médico de P.R., supra. Nuestro ordenamiento obliga al médico a responder por los daños y perjuicios causados tan sólo cuando actúa negligentemente, con descuido o falta de la pericia profesional que exigen las circunstancias. Véase Brau, Los daños y perjuicios extracontractuales en Puerto Rico, Publicaciones J.T.S., Inc., 1986, Vol. I, págs. 248-294. Ahora bien, al médico se le reconoce una amplia discreción en el cuidado de un paciente. No incurre en responsabilidad el médico que ante las circunstancias particulares usa su buen juicio profesional, *1099 enmarcado en los límites de lo razonable y aceptable para muchos sectores de la profesión médica. Lozada v. E.L.A., 116 D.P.R. 202 (1985). Por lo tanto, un error de juicio honesto y razonable en el diagnóstico o el tratamiento constituye un eximente de responsabilidad cuando las autoridades médicas están en desacuerdo sobre cuál es la cura adecuada."
Así, es forzoso concluir que los apelantes no han puesto a este Foro apelativo en posición de intervenir con las determinaciones del Tribunal apelado, quien aplicó normas de derecho antes expuestas.
III
En atención a lo anteriormente expresado, confirmamos la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce.
Así lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 92
1. Así fue estipulado por las partes. (Determinación de Hecho Número 4 de la Sentencia, pág. 3).
2. Tumor compuesto por células del tipo que normalmente se encuentran en la médula ósea. Diccionario Enciclopédico Ilustrado de Medicina, Interamericana-McGraw-Hill, Vol. 2,1995, pág. 1107.
3. Tumor de células plasmáticas caracterizadas por focos tumorales múltiples en la médula ósea. Diccionario Enciclopédico Ilustrado de Medicina, supra.