# 99 DTA 174

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

MERIDA APONTE DE DIAZ Y OTROS
Apelados

v.

HOSPITAL SAN GERARDO Y OTROS
Apelantes

Núm. KLAN-98-00261

San Juan, Puerto Rico, a 18 de mayo de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Miranda de Hostos y Giménez Muñoz

Giménez Muñoz, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El apelante, Dr. Rafael L. Oms Rivera, solicita la revisión de la sentencia emitida por el Tribunal de Primera Instancia del 28 de enero de 1998, la cual declaró con lugar la demanda por impericia médica radicada en su contra por la señora Mérida Aponte de Díaz.

# I

El 6 de julio de 1991, la señora Mérida Aponte de Díaz se lastimó el hombro derecho al levantar un cubo de agua en su casa, perdiendo el movimiento de ese hombro y causándole mucho dolor. La señora Aponte acudió a la Sala de Emergencia del Hospital San Gerardo donde se le tomaron radiografías, se le inmovilizó el brazo, le recetaron anti-inflamatorios y la refirieron al Dr. Oms, quien es fisiatra.

El Dr. Oms atendió a la apelada por primera vez el 23 de julio de 1991. Determinó, por las radiografías que se le habían tomado y el examen físico efectuado, que la Sra. Aponte no tenía fractura ósea en el hombro, pero estaba limitado el arco de movimiento del hombro derecho, tenía lesión en el área del manguillo de los rotadores, *("rotator cuff")*, y tenía mucho dolor. El cuadro de síntomas presentados por la señora Aponte podía deberse a uno de varias condiciones del manguillo de los rotadores, como podría ser la bursitis, tendinitis o rotura del manguillo de los rotadores.

El Dr. Oms hizo un diagnóstico de impresión de tendinitis y prescribió un programa conservador de tratamiento que consistió de ejercicios mínimos, anti-inflamatorios y descanso. Volvió a atender a la Sra. Aponte una semana más tarde, el 30 de julio de 1991. En esta ocasión, la apelada se quejó de mucho dolor y limitación en el movimiento del brazo derecho. Se le inyectó un anti-inflamatorio y se volvió a examinar a la paciente a los dos días, el 1 de agosto de 1991. Según los récords médicos, la señora Aponte mostraba gran mejoría tanto de dolor como de movimiento y se recomendó nuevamente que acudiera a terapias para el hombro. Sin embargo, según el testimonio vertido en corte abierta por la apelada, ésta nunca tuvo mejoría ni del dolor, ni del movimiento.

La señora Aponte volvió a ver al Dr. Oms el 10 de septiembre de 1991, indicando que había recurrido más fuertemente el dolor y la limitación de movimiento. El Dr. Oms volvió a recomendarle terapias y más anti-inflamatorios. La señora Aponte recibió terapias los días 11, 12, 13, 16, 18 y 20 de septiembre de 1991. Surge del expediente que la evidencia, según los testimonios vertidos por la señora Aponte y el Dr. Francisco Carlos, perito médico de la parte demandante, y los expedientes de la terapeuta, son contradictorios.

La señora Aponte visitó al Dr. Oms por última vez el 1 de octubre de 1991. Los récords médicos del Dr. Oms indican que la paciente había mejorado en un 50% con respecto al dolor y la limitación de movimiento. Sin embargo, ésta fue la última visita de la señora Aponte al Dr. Oms. Durante el tiempo que duró el tratamiento brindado por el Dr. Oms a la señora Aponte, aparte de las radiografías, nunca se le ordenó ningún otro tipo de prueba.

El 23 de diciembre de 1991, la señora Aponte acudió a una cita con el Dr. Francisco Carlos, ortopeda. Este le recetó anti-inflamatorios y le ordenó una prueba diagnóstica conocida como un artrograma, para determinar si había rotura en el manguillo de los rotadores. El artrograma es una prueba que se utiliza para precisar si hay o no rotura del manguillo de los rotadores y de esa manera se determina el tratamiento a seguir.

La señora Aponte regresó a su próxima cita con el Dr. Carlos el 30 de diciembre de 1991. El estudio del artrograma, indicaba que efectivamente existía una rotura en el manguillo de los rotadores, por lo que se programó y realizó una intervención quirúrgica por el Dr. Carlos en enero de 1992, descubriéndose una rotura masiva del manguillo de los rotadores con deterioro avanzado y retraimiento del tejido circundante al manguillo debido al tiempo transcurrido desde el accidente. Por esta razón, la operación no pudo devolverle a la señora Aponte todo el movimiento del hombro ni la fuerza del brazo derecho, aunque eliminó por completo el dolor.

El 18 de noviembre de 1992, la señora Aponte y otros presentaron demanda contra el Dr. Oms y el Hospital San Gerardo por daños y perjuicios. Luego de algunos incidentes procesales se desistió de la demanda contra el Hospital San Gerardo. Se alegó en la demanda que el Dr. Oms había sido negligente en el diagnóstico y

tratamiento de la señora Aponte en relación con la lesión sufrida el 6 de julio de 1991.

El Tribunal de Instancia, luego de celebrar vista, determinó que el Dr. Oms había sido negligente en el diagnóstico y tratamiento de la señora Aponte y que ésta quedó con una incapacidad permanente de 60% a 70% en el movimiento de su brazo derecho debido únicamente al retraso en llevar a cabo la operación para reparar la rotura en el manguillo de los rotadores. El tribunal estimó que el médico fue negligente al no ordenarle el artrograma para descartar la posibilidad de la rotura del manguillo de los rotadores, al ver que la paciente no mejoraba con el tratamiento prescrito. Al tribunal sentenciador le mereció credibilidad el testimonio de la señora Aponte y su perito, Dr. Carlos. Determinó, por tanto, que hubo negligencia en el diagnóstico y tratamiento de la apelada y condenó al Dr. Oms al pago de $95,000 a la señora Aponte por daños físicos y angustias mentales sufridas por ella; $10,000 al esposo de la señora Aponte por las angustias mentales sufridas por él; $5,000 a cada uno de los hijos de la señora Aponte que vivían con ella al momento de la lesión, por las angustias mentales sufridas por ellos y $2,000 a un hijo de la señora Aponte que no residía con ellos en ese momento. Además, impuso el pago de $5,000 en honorarios de abogado y pago de las costas incurridas por la señora Aponte.

Inconforme con dicha decisión, acude ante nos el Dr. Oms solicitando se revoque la sentencia recurrida. Alega que actuó conforme a la norma médica y que no medió negligencia de su parte en el diagnóstico y tratamiento ofrecido a la señora Aponte.

## II

En Puerto Rico, la responsabilidad civil derivada de actos u omisiones en que intervenga la culpa o la negligencia, se rige por lo dispuesto en el artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, bajo el cual deben concurrir tres requisitos: un daño, un acto u omisión culposa o negligente, y la correspondiente relación causal entre el daño y la acción u omisión. *Toro Aponte v. E.L.A.,* **97 J.T.S. 18.** Por otro lado, para determinar si una omisión genera responsabilidad se requiere que exista un deber jurídico de actuar o de cuidado, de parte del causante del daño y que de haberse realizado el acto omitido se hubiera evitado el daño. *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294 (1990). Un factor esencial es el deber de previsibilidad e incluye *"tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible".* Elba A.B.M. v. U.P.R., supra. O sea, *"la culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso. La diligencia exigible es la que cabe esperar del ser humano medio, el buen pater familias". Tormos Arroyo v. Departamento de Instrucción Pública,* 140 D.P.R. ___ (1996), **96 J.T.S. 34.**

En los casos de daños y perjuicios por mala práctica de la medicina, todo médico incumple su deber de previsibilidad si deja de prestar a sus pacientes *"aquella atención médica, que a la luz de los modernos medios de comunicación y enseñanza, satisfaga las exigencias generalmente reconocidas por la propia profesión médica". Santiago Otero v. Méndez,* 135 D.P.R. ___ (1994), **94 J.T.S. 38.** Esto significa que todo médico tiene que prestar a su paciente servicios profesionales a un nivel de excelencia. Si él no puede hacerlo, su deber de previsibilidad requiere que lo refiera a otro médico que pueda brindar la atención que el paciente requiere. *Martí Méndez v. Abreu Feshold,* 143 D.P.R. ___ (1997), **97 J.T.S. 99.**

Para que un demandante prevalezca en una acción de daños y perjuicios por impericia médica, éste debe demostrar *"mediante preponderancia de la prueba, que el tratamiento médico ofrecido por el demandado, o la ausencia de proveer el tratamiento indicado y correcto, fue el factor que con mayor probabilidad ocasionó el daño sufrido por el paciente".* En otras palabras, la parte demandante tiene que probar que el tratamiento suministrado por el demandado no fue el adecuado; para ello se requiere que la relación de causalidad entre el daño y el acto negligente no se establezca a base de una mera especulación o conjetura. *Santiago Otero v. Méndez,* 135 D.P.R. ___ (1994), **94 J.T.S. 38.** (Citas omitidas); *Castro Ortiz v. Municipio de Carolina,* 135 D.P.R. ___ (1994), **94 J.T.S. 17.**

Sin embargo, un médico no incurre en mala práctica de la medicina cuando se encuentra con una situación en la cual existe duda educada y razonable sobre cuál es el curso a seguir. Este tipo de error no implica negligencia, pues *"un error de juicio honesto y razonable basado en un desacuerdo latente entre las autoridades médicas sobre el diagnóstico o tratamiento recomendable no constituye un acto negligente que sujete a responsabilidad torticera".* Ramos Robles v. García Vicario, 134 D.P.R. ___ (1993), **93 J.T.S. 167.** Por tanto, *"el médico tiene el deber de hacer un esfuerzo honesto y concienzudo para enterarse de los síntomas y de la condición del paciente. Se le exige que ponga de manifiesto su juicio, su prudencia y razonabilidad en el intento de llegar a un diagnóstico correcto al cumplir con su deber de esforzarse por conocer la verdadera condición de la paciente".* Castro Ortiz v. Municipio de Carolina, supra.

El Tribunal de Primera Instancia determinó, entre otras cosas, que la recurrente le había dicho que, al levantar un cubo, sintió que se le rompió algo en el hombro. El Dr. Oms, sin embargo, advertido de esa situación, en la primera visita descartó que la Señora Aponte tuviese una rotura en el área del manguillo de los rotadores. Instancia determinó, además, que, en vista de que los síntomas que la señora Aponte presentó eran compatibles con varias condiciones del manguillo de los rotadores que ya mencionáramos y dado el cuadro de síntomas presentes en dicha paciente, lo más probable era rotura del manguillo de los rotadores. Por lo anterior, es significativo que el Dr. Oms llegara a un diagnóstico de impresión de tendinitis del manguillo sin antes descartar rotura del mismo.

El examen del récord refleja que el apelante nunca le ordenó a la señora Aponte un artrograma para descartar la posibilidad de rotura del manguillo y que continuó con el diagnóstico de impresión de tendinitis durante el tiempo que atendió a la señora Aponte. Además, no efectuó un diagnóstico diferencial para diferenciar entre las posibles condiciones señaladas.

Es conocido que el médico que acepta un paciente no debe limitarse a realizar un mero examen; si el historial y los síntomas sugieren más de un diagnóstico, el médico está en la obligación de hacer diversos diagnósticos y emprender el proceso de eliminación (differential diagnosis), mediante exámenes prevalecientes en la profesión. *Negrón v. Municipio de San Juan,* 107 D.P.R. 375 (1978).

La negligencia del apelante se encuentra fundamentada en el haber practicado un examen rutinario que le llevó a un diagnóstico equivocado. El apelante tampoco refirió a la demandante a un ortopeda, y tampoco ordenó un artrograma para descartar o confirmar la rotura del manguillo de los rotadores. Fue el Dr. Carlos, quien mereció entera credibilidad al Tribunal de Primera Instancia, quien estableció que con el historial de la señora Aponte, era probable que tuviera una rotura del manguillo de los rotadores y no una tendinitis; que el modo de descartar la rotura o comprobar la tendinitis era mediante un artrograma.

Por último, es doctrina reiterada que, de ordinario, no se intervendrá con el ejercicio de la discreción de los Tribunales de Instancia a menos que, entre otros factores, se considere que el tribunal abusó de su discreción o se equivoque en la interpretación o aplicación de una norma procesal y que la intervención evitará un perjuicio sustancial. *Lluch v. España Service Sta.,* 117 D.P.R. 729 (1986). *"Reiteradamente hemos establecido que no intervendremos con la apreciación de la prueba realizada por el Tribunal de Instancia en ausencia de pasión, prejuicio o error manifiesto".* Méndez de Rodríguez v. Morales Molina, 142 D.P.R. ___ (1996), **96 J.T.S. 149.**

Por las consideraciones anteriores se confirma la sentencia de Instancia.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General